Marian GORLIKOWSKI,
Plaintiff–Appellee,

v.

Richard B. TOLBERT, II and J.W. Express, Incorporated, Defendants–Appellants.

No. 94–3150.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 6, 1995.

Decided April 12, 1995.

**1440**

Stephen A. Tyler, Friedrich, Bomberger, Tweedle & Blackmun, Highland, IN, Joseph

A. Power, Jr., Thomas Michael Power (argued), Power, Rogers & Smith, Chicago, IL, for plaintiff-appellee.

Eric L. Kirschner, Scott A. Bearby, Beckman, Kelly & Smith, Hammond, IN, Larry L. Chubb (argued), Valparaiso, IN, for defendants-appellants.

Before MANION and ROVNER, Circuit Judges, and NORGLE, District Judge.*

MANION, Circuit Judge.

A jury awarded Marian Gorlikowski $1,425,000 for injuries received when a semi-tractor trailer driven by Richard B. Tolbert, II, for J.W. Express, Inc., struck Gorlikowski's vehicle. Tolbert and J.W. Express appeal, alleging that the jury was improperly instructed and that the verdict is excessive. We affirm.

## I. Facts

On August 23, 1991, Gorlikowski was driving a tractor trailer down Interstate 65 toward Lafayette, Indiana, when he noticed that his engine's temperature gauge was rising. At first, the gauge rose fairly slowly and Gorlikowski thought he could reach his destination without stopping. But when the temperature began rising at a faster rate, he decided to stop and check his engine. Gorlikowski pulled into the emergency lane, put on his hazard lights, and stopped the truck.

Upon inspecting his engine, Gorlikowski noted a leaking hose. He retrieved some tape from the cab, returned to the front of his truck, and began to patch the hose. In order to do so, Gorlikowski climbed onto his front tire and leaned into the engine compartment where he perched with a large part of his body laying over the engine. While Gorlikowski was making these repairs, a truck driven by Tolbert for J.W. Express (referred to collectively as "Tolbert") and moving at about 60 m.p.h. sideswiped Gorlikowski's truck. Gorlikowski was found a considerable distance from his vehicle. He suffered injuries to his right knee, jaw and teeth, as well as other bruises and contusions.

* Hon. Charles R. Norgle, Sr., of the Northern District of Illinois, sitting by designation.

Gorlikowski filed suit against Tolbert, alleging that Tolbert's negligence caused the collision and his damages. Tolbert answered that Gorlikowski was over 50% negligent for the accident and should recover nothing. After discovery, the parties filed a pretrial order. In that pre-trial order, which required the parties to disclose their contentions, Tolbert stated:

> [Tolbert] had only seconds to react once he was upon [Gorlikowski's truck] and just as he attempted to avoid the parked vehicle, his passenger side mirror and front right corner of his trailer impacted the left rear corner of the [Gorlikowski's] trailer causing [Gorlikowski] to fall from the left front tire to the ground.

The case went to trial in this posture, with the parties disputing fault and damages. We describe their arguments in very general terms below because great detail is not required.

At trial, Gorlikowski claimed that Tolbert's negligence caused the collision. More specifically, his proofs and questioning were designed to show that Tolbert was negligent because he failed to leave a safe distance between himself and other vehicles, he was traveling at an excessive speed given traffic conditions, and he failed to stop his truck before the collision. Gorlikowski also presented evidence that Tolbert might have been driving for over eight hours. In addition, he submitted evidence that another trucker traveling with Tolbert warned him that Gorlikowski's vehicle was in the emergency lane, but Tolbert did not hear that warning. Finally he offered evidence that Tolbert did not even see Gorlikowski's trailer until about two seconds before impact. Gorlikowski argued that Tolbert had been driving a long time, was tired and not paying attention, and, as a result, struck his truck while traveling at about 60 m.p.h. According to Gorlikowski, the force of that impact threw him through the air and he landed a considerable distance from his truck.

Tolbert countered that Gorlikowski's own negligence caused the collision. More specifically, Tolbert's proofs and questions were designed to show that Gorlikowski was negligent because he left a portion of his trailer in the travel lane, and he failed to put out the reflective triangles that serve as a hazard warning for other motorists. Tolbert also claimed that Gorlikowski was negligent because he failed to pull over sooner. According to Tolbert, if Gorlikowski had pulled over sooner he would have been able to pull his truck off onto a grassy area bordering the emergency lane, and this would have reduced the risk of an accident. Instead he pulled over at the beginning of a bridge where the shoulder width was restricted by a barrier.

The parties also disputed the nature and extent of Gorlikowski's injuries. Several of Gorlikowski's treating doctors testified. Taken together their testimony provided evidence that Gorlikowski's knee injury was serious and painful and would permanently limit his mobility. Over time it would become progressively worse, and would eventually require a knee replacement. Gorlikowski also submitted his past medical expenses, which included costs for five operations on his knee. Evidence showed that future medical costs, such as the cost of a required knee replacement, would be considerable. Gorlikowski also introduced evidence that he would neither be able to return to his work as a mechanic and truck driver, nor could he take any job which required extended periods of walking, standing, sitting, or frequent stair-climbing, any of which would put excessive stress on his knee. Finally, Gorlikowski testified about the impact which the injury had upon his lifestyle. Among other things, Gorlikowski noted that the injury would preclude him from playing soccer with his children. He made this comment even though his wife and children were still in Poland, waiting for him to bring them over to the United States.

Although Tolbert disputed the nature and extent of Gorlikowski's injuries, he did not introduce any evidence about those injuries or Gorlikowski's future employment prospects. Instead Tolbert limited himself to the cross-examination of Gorlikowski's experts. The general thrust of Tolbert's cross-examination of various witnesses was that Gorlikowski's injuries were fairly marginal so that he would be able to perform a wide variety of functions in about six months, and he could

get another job. Tolbert's cross-examination of Gorlikowski focused on the same theme; it was designed to show that Gorlikowski's injuries would have a fairly minimal effect on his lifestyle. To this end Tolbert asked Gorlikowski where his family was currently living, and Gorlikowski testified that his wife and children were still in Poland, his homeland.

During closing argument, Gorlikowski argued that Tolbert's negligence was responsible for the collision which threw him off his truck causing his injuries, that his injuries were serious and would become progressively worse, and that he had no real chance of finding a job given the limitations resulting from his injuries. Gorlikowski asked the jury to compensate him for his past and future medical expenses, lost wages and pain and suffering. Gorlikowski also accused Tolbert of prejudice, arguing that Tolbert had made his immigrant status an issue in the hopes that the jury would not fully compensate him for his injuries because he was not an American citizen. Tolbert objected to this comment, saying it was a "little overboard," but the judge overruled that objection.

For the most part, Tolbert used his closing to argue that the accident was Gorlikowski's fault because he pulled over at a narrow part of the highway, did not pull his whole trailer off the highway, and did not put out his reflective triangles. He also argued that Gorlikowski's injuries were not really serious and he could find work with little difficulty after six months or so. Also, Tolbert briefly argued that Gorlikowski's injuries might have been caused when a second truck's after-draft blew him to the ground, although he noted that this argument "hasn't really been addressed." Here, he asserted that Gorlikowski had not been thrown from the truck by the impact of the collision, but rather, was blown off his truck moments later by another truck's after-draft. Tolbert's "windfall" theory was raised for the first time in his closing argument; it was not presented in his answer, in the pretrial order or, for that matter, in his opening argument.[1]

After closing argument, the judge instructed the jury. Significant here is Instruction Number 14. That instruction reads:

> On August 23, 1991, the plaintiff, Marian Gorlikowski, was driving a semi-tractor trailer southbound on Interstate 65 when his truck began to overheat. The plaintiff pulled his vehicle off the road onto the shoulder area. He then stood on the front tire in order to put water into the radiator. The defendant, Richard Tolbert, II, who was an employee of the defendant, J.W. Express, Inc., also was driving a semi-tractor trailer southbound on Interstate 65 in the right lane. *Tolbert's vehicle struck the plaintiff's parked vehicle, the impact of which caused the plaintiff to fall from the tire to the ground, severely injuring him.*
>
> The plaintiff contends that the defendants were negligent in that they breached their duty to exercise reasonable and ordinary care in the operation of a motor vehicle. The defendants deny that they were negligent and contend that the plaintiff's injuries were the result of his own negligence. *The defendants also dispute the nature and extent of the plaintiff's injuries.* [Emphasis supplied.]

After the jury left the room to deliberate, Tolbert objected to the last sentence in the first paragraph of Instruction 14, on the grounds that the facts described in the instruction were disputed. Earlier, at an instruction conference held off the record, Tolbert had asked the judge to revise Instruction Number 14 to reflect his causation theory and omit the "severe" characterization of Gorlikowski's injuries. Tolbert's objection on the record was overruled, as it had been at the instruction conference.[2]

**1.** Tolbert relies on three sources for his argument that the after-draft caused the fall: a paragraph in a deposition that was read into the trial record where a trucker who saw the accident testified that he thought he saw Gorlikowski roll out from under his truck after the impact; a report made by an emergency technician which recorded Gorlikowski's statement that he "hung on until the other semi went by and the wind from the 2nd truck blew him to the ground ...;" and his cross-examination of Gorlikowski. During that cross-examination Gorlikowski said that the emergency technician had mistranslated his broken English and that, in fact, he had said that he tried to hang on but the impact of the collision "blew" him through the air.

**2.** Tolbert has represented that he asked the court to revise Instruction Number 14 to reflect his

The jury found for Gorlikowski. Specifically, the jury found that Tolbert bore 95% of the fault for $1,500,000 worth of damages. Thus, Gorlikowski was awarded $1,425,000 in damages. The jury verdict was a general verdict; Tolbert never proposed a special verdict form. Tolbert appealed.

## II. Analysis

On appeal, Tolbert claims that the jury's verdict must be set aside for a number of reasons. First, Tolbert alleges that the trial court made several errors of law which require reversal. Here, Tolbert argues that Jury Instruction Number 14 improperly removed issues of causation and damages from the province of the jury. He also argues that the trial court erred when it refused to strike Gorlikowski's accusation of prejudice. Tolbert also challenges the jury's verdict. He asserts that the evidence is insufficient to support the jury's finding that he bore 95% of the fault for the accident. He also claims that the jury verdict is improper because it bears no rational relationship to Gorlikowski's injuries, is excessive, and was improperly calculated.

### A. *Instruction Number 14*

Tolbert argues that the trial court removed disputed issues of causation and damages from the jury when it instructed the jury that: "Tolbert's vehicle struck the plaintiff's parked vehicle, the impact of which *caused* the plaintiff to fall from the tire to the ground, *severely* injuring him." First, he argues that the district court erred when it instructed the jury that the impact "caused" Gorlikowski's fall. According to Tolbert, his argument that Gorlikowski was blown off his truck by the afterdraft of another tractor trailer placed causation at issue, and this issue was properly before the jury. Tolbert also argues that the district court erred when it instructed the jury that Gorlikowski was "severely" injured by his fall, because he

disputed the nature and extent of Gorlikowski's injuries at trial.

#### 1. *Causation.*

In reliance on the pretrial order, the district court instructed the jury that the impact of the collision *caused* Gorlikowski to fall to the ground. Tolbert claims that the court erred when it failed to modify Instruction Number 14, as he requested at the instruction conference, so that the jury would have to consider his causation defense. In response, Gorlikowski argues that the district court properly refused to modify the instructions to include a theory that was not disclosed in the pretrial order.

We agree that Tolbert's claim of instructional error must be evaluated in context of the procedural framework created by the Federal Rules of Civil Procedure and, in particular, those principles and policies underlying Rule 16, which governs pretrial orders. Rule 16 provides that a court can order a pretrial conference to address a wide variety of matters for the purpose of "improving the quality of the trial through a more thorough preparation." Fed.R.Civ.P. 16(a)(4). The rule authorizes the court to take appropriate action concerning the formulation and simplification of issues, including the elimination of frivolous claims or defenses, and the necessity or desirability of amendments to the pleadings. Fed.R.Civ.P. 16(c)(1) & (2). Once a pretrial conference is held, the rule provides that a pretrial order *shall* be issued reciting the action taken, and provides that the order *shall* control the subsequent course of the action unless modified by a subsequent order. Fed.R.Civ.P. 16(e).

This court has recognized that the pretrial conference and order are a vital part of the procedural scheme created by the Federal Rules of Civil Procedure. "Because the parties rely on the pretrial conference to inform them precisely what is in controversy,

---

newly-raised causation theory in an instruction conference that was held off the record. Therefore, Tolbert argues, the court understood that this newly-raised causation theory was one basis for the very general objection to Instruction Number 14 that he made on the record. Gorli-

kowski does not dispute this assertion, and therefore, we accept it. Otherwise, Tolbert's general objection would constitute a waiver of this issue. *See Stachniak v. Hayes,* 989 F.2d 914, 920 (7th Cir.1993).

the pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial." *Erff v. Marktton Industries, Inc.*, 781 F.2d 613, 617 (7th Cir. 1986); *see also Hullman v. Board of Trustees of Pratt Com. College*, 950 F.2d 665, 668 (10th Cir.1991) (pretrial order "measures the dimensions of the lawsuit"). For this reason, "[a]ttorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be." *Erff*, 781 F.2d 613, 617. Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pretrial order should not be considered by the fact-finder. *Id.* at 616–19.[3]

Of course, the pretrial order can be modified, albeit not easily. Rule 16 provides that "[t]he order following a final pretrial conference shall be modified [but] only to prevent manifest injustice." Fed.R.Civ.P. 16(e); *Matter of Delagrange*, 820 F.2d 229, 232 (7th Cir.1987). This "stringent standard" is required because otherwise the pretrial order would not serve its purpose: "promoting efficiency and conserving judicial resources by identifying the real issues prior to trial..." *See* Fed.R.Civ.P. 16, advisory committee notes to subdivisions c & e (1983). Parties could always avoid the disclosure and oversight that Rule 16 authorizes simply by asserting new claims or defenses at trial. Rule 16 does not permit such sleight. of hand. Rather, a court confronted with an effort to modify a pretrial order must:

> weigh the possible hardships imposed on the respective parties by allowing or refusing to allow the. order to be modified; the court must also balance the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements.

*Matter of Delagrange*, 820 F.2d at 232 (internal brackets omitted).

■ The trial court's decision concerning the modification or enforcement of a pretrial order is reviewed for an abuse of discretion. *Mankey v. Bennett*, 38 F.3d 353, 359 (7th Cir.1994). "Generally, an abuse of discretion occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1187 (7th Cir.1994) (quotations and citations omitted).

■ Tolbert asked the trial court to revise Instruction Number 14 to reflect his newly raised causation theory at the close of trial, but the trial court refused his request and instructed the jury only as to those issues raised in the pretrial order. Tolbert asserts that the trial court erred when it refused to modify its jury instructions because the causation issue was tried by consent of the parties under Fed.R.Civ.P. 15(b). He argues that Gorlikowski consented to try this issue when he failed to object to the scant evidence upon which that theory rests.

But Gorlikowski did not consent to the trial of this causation issue by failing to

---

**3.** We note that all the circuits that have reached this issue agree that a trial court may properly exclude evidence or theories not raised in a pretrial order absent an abuse of discretion. *See In Re Control Data Corp. Securities Litigation,* 933 F.2d 616, 621 (8th Cir.1991) (district court did not abuse its discretion when it excluded testimony relevant to a new theory not raised in pretrial order); *Hullman v. Board of Trustees of Pratt Com. College,* 950 F.2d 665, 667–68 (10th Cir. 1991) (district court did not abuse its discretion when it dismissed claim not raised in the pretrial order); *McGinnis v. Ingram Equipment Co., Inc.,* 918 F.2d 1491, 1494 (11th Cir.1990) (defense based on plaintiff's failure to state a claim was waived on appeal, in part because it was not raised in pretrial order); *Canal Ins. Co. v. First General Ins. Co.,* 889 F.2d 604, 609 (5th Cir.

1989) (trial court did not abuse its discretion when it refused to consider a defense based on insurance policy exclusion because it was not raised in pretrial order); *Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191, 1194 (3d Cir.1987) (district court did not abuse its discretion when it refused to permit plaintiff to raise negligence theory relinquished during pretrial conference and therefore omitted from pretrial order); *Hotel Emp., et al. Health Tr. v. Elks Lodge 1450,* 827 F.2d 1324, 1328–29 (9th Cir.1987) (trial court properly refused to consider. equitable defenses not raised in pretrial order); *Daniels v. Board of Educ. of Ravenna City School,* 805 F.2d 203, 210 (6th Cir.1986) (district court did not abuse its discretion when it refused to consider a disparate impact claim not raised in pretrial order).

object to this evidence, because the evidence was properly admissible for another purpose. Absent some notice of this issue, Gorlikowski could easily see the few questions that arguably support Tolbert's theory as efforts to attack his credibility. Thus, his failure to object cannot be considered his consent to the trial of this issue. *See Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir.1992) (defendant's failure to object to introduction of evidence on which new RICO enterprise theory rested was not consent to try issue where evidence·was relevant to a different enterprise theory properly before court); *In re Rivinius, Inc.,* 977 F.2d 1171, 1175–77 (7th Cir.1992) (defendant did not consent to try issue where it was not raised until close of proofs and evidence was relevant to elements of claim properly before the court); *Bass by Lewis v. Wallenstein,* 769 F.2d 1173, 1188 n. 15 (7th Cir.1985) (plaintiff cannot wave the "magic wand" of Rule 15(b) and claim that opponent's failure to object to evidence upon which new theory rests is consent to trial on that theory, where evidence was clearly relevant to other issues properly before the court, and therefore, opponent had no reason to object). Any other rule would deprive a party of notice concerning the claims asserted and could undermine the whole discovery and pretrial process. Tolbert's effort to escape the strictures of the pretrial order by means of Rule 15(b) must fail.

Thus, Rule 16 governs Tolbert's claim because, as noted, it requires that the pretrial order *shall* limit the evidence and issues that can be presented at trial, absent a modification of the order. Fed.R.Civ.P. 16(e). Of course this means that the pretrial order necessarily controls those issues that can be treated by the jury instructions. Therefore, where a party·requests that jury instructions be modified to remedy a variance between a pretrial order and their trial presentation, that request is properly treated as a motion to modify the pretrial order, *see Santiago v. Lykes Bros. S.S. Co., Inc.,* 986 F.2d 423, 427 (11th Cir.1993) (district court's decision to instruct jury on theory not raised in pretrial order), and the trial court's decision is properly reviewed for an abuse of discretion. *Mankey,* 38 F.3d at 359.

The district court did not abuse its discretion when it refused to revise its jury instructions to reflect Tolbert's causation theory. Tolbert did not raise this theory until closing argument, although the evidence upon which that theory rests was available at the time of the pretrial conference. *See In re Control Data Corp.,* 933 F.2d at 621 (class cannot raise theory omitted from pretrial order because it should be aware of viable theories after discovery and raise those theories in pretrial); *Canal Ins. Co.,* 889 F.2d at 609 (defendant cannot raise new theory omitted from pretrial order where facts upon which theory rests were available at the time of pretrial conference); *Petree,* 831 F.2d at 1194 (party offered no compelling reason why the proposed theory of liability was not disclosed at the pretrial conference); *Daniels,* 805 F.2d at 210 (district court did not abuse its discretion when it refused to consider theory raised for first time after trial). And from our review of the record, it appears that Gorlikowski would have been seriously prejudiced if this issue had been tried; he would have had to conduct further discovery in order to counter this theory. Under these circumstances, Tolbert cannot show that the district court's decision created a manifest injustice. The district court properly rejected Tolbert's effort to shift the whole focus of this litigation just before the case went to the jury. *See Mankey,* 38 F.3d at 359 (there was no manifest injustice where court relied on pretrial order to bar evidence raised for first time in the "twelfth hour"); *Petree,* 831 F.2d at 1194 (district court's refusal to grant eleventh hour motion to amend the pretrial order was not an abuse of discretion).

There is surely no manifest injustice here. The impact from the sideswipe was most likely the cause of Gorlikowski's fall from the truck. Tolbert's belated theory that it was the after-draft of a second truck that caused the fall, rather than the initial collision with his truck, is a bit farfetched. Clearly there was no abuse of discretion by the trial court.

### 2. *Characterization of damages.*

 Tolbert also argues that the trial court erred by instructing the jury that "Tolbert's vehicle ·struck the plaintiff's parked

vehicle, the impact of which caused the plaintiff to fall from the tire to the ground, *severely* injuring him." According to Tolbert, this language led the jury to believe that the nature and extent of Gorlikowski's injuries was beyond dispute. In a diversity case, the validity of jury instructions is determined by state law. *Rosenburg v. Lincoln American Life Ins. Co.*, 883 F.2d 1328, 1333 (7th Cir. 1989). In assessing Tolbert's claim, we must read the jury instructions as a whole. *See Hemings v. Redford Lounge, Inc.*, 485 N.E.2d 1378, 1381 (Ind.App.1985); *United Farm Bureau Mut. Ins. v. Cook*, 463 N.E.2d 522, 527 (Ind.App.1984). A review of the jury instructions shows that the last sentence of Instruction Number 14 expressly states that the parties dispute the nature and extent of Gorlikowski's injuries; Instruction Number 25 clearly indicates that the jury must determine the extent of Gorlikowski's injuries; and Instruction Number 32 admonishes the jury not to infer that damages are appropriate simply because the court has instructed them on that subject. Although Gorlikowski endured several operations and medical expenses were quite high, the trial court's decision to employ the adjective "severely" was probably ill-advised. Nevertheless, the instructions, when considered as a whole, clearly informed the jury that the nature and extent of Gorlikowski's injuries were in dispute.

## B. Closing Argument

■ Tolbert argues that the trial court erred when it overruled his objection to Gorlikowski's accusation of prejudice. He believes that this argument inflamed the passions of the jury, and he wants a new trial. For the sake of our analysis, we accept Tolbert's trial objection that Gorlikowski's remarks were "a little over-board" as barely sufficient to preserve the issue. Even so, reversal is not required because "the relevant inquiry is not whether they were improper but whether the district court's response, or lack of response, to the remarks was a prejudicial abuse of discretion." *Joan v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir.1985). And in making this assessment, we give great weight to the trial court's judgment. *Id.* (quotations and citation omit-

ted). The district court did not abuse its discretion when it overruled Tolbert's objection. Gorlikowski's so-called accusations of prejudice were a few vague remarks about his being Polish and his desire to have his family here rather than in Poland. Tolbert now hopes those remarks will allow him to avoid a jury verdict he clearly thinks is unacceptable, but which was largely the result of his failure of proof at trial. We agree with the trial court; these remarks were so insignificant that they do not justify reversal. *See Carmel v. Clapp & Eisenberg, P.C.*, 960 F.2d 698, 704 (7th Cir.1992).

## C. Challenges to the Jury Verdict

■ Tolbert also challenges certain jury determinations. According to Tolbert, the evidence does not support the jury's finding that he bears 95% of the fault for the accident. He also claims that the jury verdict is improper because it bears no rational relationship to Gorlikowski's injuries, is excessive, and was improperly calculated. We use federal standards to evaluate these challenges. *See Mayer v. Gary Partners and Co. Ltd.*, 29 F.3d 330, 335 (7th Cir.1994); *Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th Cir.1993). Both challenges require Tolbert to bear a heavy burden. "The test in this circuit for reviewing a jury verdict on appeal is not whether it was against the weight of the evidence, but whether there is a reasonable basis in the record for the verdict ... If this test is met, we will not reweigh the evidence but will let the verdict stand." *Carmel v. Clapp & Eisenberg, P.C.*, 960 F.2d at 703 (citations omitted). Further, a jury's damage award is vacated "only if the verdict is so monstrously excessive or if there is no rational connection between the evidence on damages and the verdict." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir.1993) (quotations and citations omitted). We review the damages evidence in the light most favorable to the jury verdict. *Id.* We also attempt some comparison between the jury award at issue and other awards in similar cases. *Frazier v. Norfolk & Western Ry. Co.*, 996 F.2d 922, 925 (7th Cir.1993).

### 1. Sufficiency of the evidence regarding comparative fault.

Tolbert argues that there is no basis in the record for the jury's determination that he was 95% at fault for the collision. Tolbert argued that Gorlikowski was at fault because he did not pull his whole trailer off the highway, did not put out his reflectorized triangles when he pulled over, and did not pull over at a part of the highway bordered by a flat grassy area (so he could pull his truck even further off the road). But as Gorlikowski pointed out, a good deal of traffic—including many trucks—managed to avoid plowing into his truck at about 60 m.p.h. In addition, Tolbert admitted that he did not slow his vehicle down before the crash and did not see Gorlikowski's truck until he was right on top of it. Based on Tolbert's admissions the jury could easily conclude that if Tolbert had been paying attention, he could have passed Gorlikowski's truck without incident. Likewise the jury could also conclude that Gorlikowski's failure to put out his reflectorized triangles made no difference because Tolbert would not have seen the warning. Apparently the jury did conclude that Gorlikowski's omissions were not an important cause of the collision, and the record provides a reasonable basis for the jury's determination. This court cannot reweigh the evidence to allocate fault in proportions more palatable to Mr. Tolbert.

### 2. Damage award.

Tolbert claims that the jury verdict is improper because it bears no rational relationship to Gorlikowski's injuries, is excessive, and was improperly calculated.[4] We cannot say that the jury's verdict is monstrously excessive or has no rational relationship to the evidence. Gorlikowski's expert witnesses provided evidence that his knee injury was serious and painful, would permanently limit his mobility, would become progressively more painful and disabling over time, and would eventually require a knee replacement. In addition, he submitted evidence showing that he had undergone five surgeries thus far, and that his past and future medical expenses would be considerable. Gorlikowski also presented evidence that he could not return to his line of work, and that he could not take any job which required extended periods of walking, standing, sitting, or frequent stair-climbing, all of which would put stress on his knee. Based on this evidence, Gorlikowski argued that the accident rendered him effectively unemployable at age 33. This evidence provides a basis for the jury's award of damages.

In fact, Tolbert's failure of proof made such a verdict almost certain. For example, on appeal Tolbert emphasizes that there is no evidence concerning Gorlikowski's "disability rating" in the record, and in closing he emphasized that Gorlikowski had not brought in any vocational expert to testify about the jobs he might be able to perform upon recovery. The real effect of Tolbert's argument, however, is to expose his own failure of proof; he did not introduce this evidence either. Rather, Tolbert limited his proofs on damages to his own cross-examination of Gorlikowski's experts; apparently the jury found this testimony credible nonetheless. Likewise, Tolbert has not produced comparable cases sufficient to persuade us that the jury's verdict is monstrously excessive and bears no rational relationship to the evidence in this case, such as it was. As this court has noted before:

> When a defendant goes for broke, staking its all on convincing the jury to award zero damages—fearing otherwise a compromise verdict—it risks being hit with a verdict much larger than if it had offered the jury an alternative estimate of damages to the plaintiff's. It should not expect the appellate court to relieve it from the consequences of its gamble.

4. In support of his argument, he presents an elaborate "reconstruction" of the jury's reasoning, and purports to tell us how it arrived at its final award. But Tolbert's "reconstruction" is self-serving speculation; neither Tolbert nor this court can really know how the jury arrived at its final award, because the jury rendered a general verdict. And Tolbert is responsible for this difficulty, at least in part, because he never submitted a special verdict form. Thus, of necessity, we limit our review to Tolbert's claim that the jury verdict is not rationally related to the evidence and is excessive.

*Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1230 (7th Cir., March 1, 1995). Apparently Tolbert gambled and lost. Because his side of the ledger is blank, Gorlikowski's evidence justifies the jury's verdict.

For the foregoing reasons, we

AFFIRM.