79 F.3d 1150
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Beverly PARHAM, Plaintiff-Appellant
v.
CHICAGO BOARD OF EDUCATION and Warner Birts, Defendants-Appellees.
 No. 95-2646.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 5, 1996.
Decided March 18, 1996.
 
 Before BAUER, RIPPLE and MANION, Circuit Judges.
 
 ORDER
 
 1
 Beverly Parham brought this action against the Chicago Board of Education ("Board") and Warner Birts, principal of Englewood High School, under 42 U.S.C. § 1983. She claimed that she had been subjected to retaliation for the exercise of her First Amendment right to freedom of speech. The matter was tried to a jury and judgment was entered for the Board and Principal Birts. Ms. Parham now appeals from the jury's verdict.
 
 1.
 
 2
 Ms. Parham has been employed with the Chicago Board of Education since 1973. She worked at Englewood High School as a licensed special education teacher from 1990 until December 1993. Prior to 1990, the needs of special education students at Englewood were met in separate "resource"[1] or self-contained classes by licensed special education teachers. In the 1990-91 school year, however, a new "inclusion" plan for special education students was implemented at Englewood. This inclusion plan was officially called the Collaborative Team Teaching Approach. The inclusion plan consisted of "mainstreaming" certain special education students into regular classes with other students rather than segregating them into their own special education classes. As part of this process, the special education teachers no longer conducted resource classes in their own classrooms, but rather were assigned as co-teachers in regular curriculum classes. The special education teachers' responsibilities in the mainstream classes were limited to observing the class and providing assistance to the special education students who asked for help. The special education teachers did not have primary responsibility for conducting the regular education classes which they attended.
 
 
 3
 Beginning in June 1991 and continuing through 1993, Ms. Parham[2] filed a series of grievances, letters, and other complaints with Principal Birts, the Board, and various other Board and Chicago Teachers' Union officials. These grievances alleged that the new inclusion program was not in compliance with Illinois state law regarding the educational plans for special education students, that the best interests of the students were not being served by the new plan, and that the role of the special education teacher under the new plan was unclear.
 
 
 4
 During this same time period, various allegations about Ms. Parham's performance were also raised by her immediate supervisor, by Principal Birts, and by other teachers and administrators at Englewood. These allegations of performance deficiencies included: Ms. Parham's uncooperative nature, her absences and tardies from assigned class periods, and her failure to attend conferences and to complete reports.[3] In March 1993, Ms. Parham was given a warning that her teacher's rating would be lowered from "excellent" to "satisfactory," and Principal Birts subsequently did lower her rating for the 1992-93 school year. Ms. Parham alleged in her complaint that her lowered rating and the other disciplinary measures taken against her were in retaliation for the grievances she filed against the defendants. Ms. Parham's claims were tried to a jury, and a general verdict was returned in favor of the defendants. Ms. Parham appeals that verdict.
 
 2.
 
 5
 The standard for reviewing a jury verdict on appeal is "not whether it was against the weight of the evidence, but whether there is a reasonable basis in the record for the verdict." Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir.1995) (citations omitted). We shall not reweigh the evidence if this standard is met; in that case, the verdict must stand. Id. Great deference traditionally has been accorded to a jury's verdict, and we shall not set aside the decision of a jury if a reasonable basis exists in the record to support that verdict. Winston Network, Inc. v. Indiana Harbor Belt R.R. Co., 944 F.2d 1351, 1358 (7th Cir.1991). Furthermore, any questions regarding the credibility of the witnesses or conflicts in the evidence must be resolved in favor of the prevailing party at trial. Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 512 (7th Cir.1986).
 
 
 6
 Ms. Parham alleges that the jury's verdict cannot stand under the standard established in Mt. Healthy Board of Education v. Doyle, 429 U.S. 274 (1977). The Supreme Court in Mt. Healthy employed a three-prong test to determine whether a public employee's First Amendment rights have been violated. Id. at 287. As applied to this case, Ms. Parham first must prove that she engaged in constitutionally protected activities. Id.; Pickering v. Board of Education, 391 U.S. 563, 569 (1968). The parties to this suit stipulated that Ms. Parham's filing of grievances was a constitutionally protected activity. Second, Ms. Parham bears the burden of proving that her protected speech was a substantial or motivating factor in the defendants' decision to lower her rating and request her transfer. See Mt. Healthy, 429 U.S. at 287. Finally, if she meets her burden of proof by showing that defendants' actions were substantially motivated by her constitutionally protected activities, the burden shifts to the defendants to prove that they would have taken the same actions even in the absence of her protected conduct. Id.
 
 
 7
 In support of her retaliation claim, Ms. Parham presented evidence of the close temporal proximity between her grievances and the disciplinary action taken against her. She maintains that this proximity shows that her grievances were a "substantial or motivating factor" behind the subsequent criticisms of her performance. Ms. Parham alleged that she had received the rating of "excellent" consistently throughout the many years she had worked for the Board and that not until after she had filed grievances regarding her opposition to the inclusion plan was her rating dropped to "satisfactory." Ms. Parham pointed to two instances, in October 1992 and in April 1993, when a disciplinary action was taken against her immediately after she had filed a grievance regarding the inclusion program. The evidence showed, however, that, beginning in June 1991, Ms. Parham had filed many other grievances, all of which were denied by the Superintendent of Schools. Yet the evidence revealed that in none of these other instances had any disciplinary action been taken against her. Ms. Parham also testified that Principal Birts had warned her against filing grievances when he met with her to present the notice of her lowered rating. Principal Birts denied warning Ms. Parham against filing grievances. He testified that he never held the grievances against her and that he believed that teachers had a right to file grievances.
 
 
 8
 Ms. Parham also called as witnesses the two teachers, Oden and Miller, who also complained formally about the restructuring of the special education program; they testified that they had been disciplined after filing their grievances. The defense, however, called Ms. Parham's witnesses' credibility into question by showing that they had both been disciplined for reasons unrelated to their grievances. When we view this evidence in the light most favorable to the defendants, as we are required to do, we conclude that a reasonable jury could have found that Ms. Parham failed to show that her protected activity was a substantial or motivating factor in the defendants' disciplinary action.
 
 
 9
 However, even if we were to assume that the jury found that Ms. Parham's protected conduct substantially motivated the defendants' actions, the defense presented sufficient evidence to support a finding that the defendants' would have taken the same action in the absence of the protected conduct. The defense called various teachers, administrators, and personnel at Englewood who had worked with Ms. Parham. They testified to various instances of Ms. Parham's performance deficiencies during the two years prior to the reduction in her rating, including: her sporadic attendance or frequent lateness for classes and assigned conferences; her refusal to add students to her caseload; her lack of lesson plans and uncooperative teaching approach; her personal conflicts with her supervisor and co-teacher; and her arrest for assaulting a student and resulting two-day suspension.
 
 
 10
 The record adequately supports the verdict of the jury. Ms. Parham points to no instructional or evidentiary error that might have resulted in an unfair trial. Accordingly, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 "Resource" classes consist of specialized instruction in a small-group format for special education students and are provided by special education teachers in areas covered by the student's regular education teacher in regular subject classes
 
 
 [2]
 Jean Oden and Virgie Miller, two other special education teachers at Englewood, joined Ms. Parham in these complaints
 3In addition, an altercation with a student resulted in Ms. Parham's arrest for assault and a two-day suspension. The assault charges against Ms. Parham were ultimately dismissed.