124 F.3d 203
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Darriel ALSOBROOKS, Plaintiff-Appellee,
v.
CHAMPION LABORATORIES, INCORPORATED, Defendant-Appellant.
 No. 96-4096.
 United States Court of Appeals, Seventh Circuit.
 Argued May 14, 1997.
Decided June 9, 1997.
 
 Appeal from the United States District Court for the Southern District of Illinois, No. 94 C 4067; J. Phil Gilbert, Chief Judge.
 Before CUMMINGS, COFFEY, and WOOD, Circuit Judges.
 
 ORDER
 
 1
 This is a diversity action for breach of an oral contract. Plaintiff resides in Battle Creek, Michigan, and defendant is a Delaware corporation with its principal place of business in Illinois.
 
 
 2
 In January 1967 plaintiff Darriel Alsobrooks formed Aero Mobile Systems (AMS), which produced oil and fuel filters for helicopters. A few years later AMS began making air filters for foreign car applications. Plaintiff designed the filters that were manufactured and sold by AMS.
 
 
 3
 In 1977 AMS entered into an agreement with Mann and Hummel, a German company, and the following year a new company, Mann Filters, Inc. (MFI) was formed. Plaintiff was the president of both AMS and MFI. The new business designed and manufactured air and oil filters for foreign car applications. Plaintiff designed all of MFI's filters and was also the supervising design engineer for them. The filters were original equipment (OEM) filters for foreign cars, and MFI's main customers were Volkswagen, Chrysler and General Motors. George Starring was then sales manager for OEM products at MFI but later became OEM sales manager for defendant. In 1981 or 1982 plaintiff bought out Mann's and Hummel's interests in MFI. In 1987 MFI filed for bankruptcy, and in 1989 plaintiff wound up MFI's affairs.
 
 
 4
 In 1987 or 1988 defendant contacted plaintiff about selling part of MFI's business to defendant, but the sale fell through. In 1989 plaintiff met several times with Thomas Mowatt, defendant's president who was interested in MFI's customers, Chrysler, General Motors and Volkswagen. Champion's filters were not approved for OEM use by those customers and Champion was not selling to them. According to plaintiff's testimony, as a result of those meetings Mowatt agreed to pay plaintiff $100 per hour for engineering and design services and to hire his son Greg for $40,000 per year as a Champion employee.
 
 
 5
 Under the alleged agreement with Mowatt, plaintiff set up a new sales organization, Fluid Systems Company (FSC), to market new filters for Champion. Plaintiff was to be FSC president and former MFI employees George Starring and Joyce Peterson were to sell for FSC. FSC was going to sell its products to Volkswagen, General Motors and Chrysler as well as a Kleen Pak line of filters which MFI had previously made for other import cars. Plaintiff designed the filters FSC was to sell.
 
 
 6
 Defendant's president admitted that Champion used the MFI design for the Volkswagen, Chrysler and General Motors filters and that its Kleen Pak line incorporated the MFI line. He denied that he agreed to pay plaintiff $100 per hour for engineering services and that plaintiff did any engineering work for Champion. However, he admitted that the Volkswagen, General Motors and Chrysler customers and the Kleen Pak line were to be assigned to FSC, which was to be paid a sales commission on their filters.
 
 
 7
 According to plaintiff's testimony, after plaintiff had completed his first week's work, Mowatt agreed to pay him $5,000 for his first 50 hours of engineering work as well as an advance of $5,000 for future expenses, and he received a check in that amount. Plaintiff testified that subsequently Mr. Mowatt told him that he was unable to pay plaintiff the rate of $100 per hour because it would cause problems within Champion. As a result, plaintiff accepted Mr. Mowatt's offer to pay him 10% of gross profits on all import car and panel filters plaintiff designed and redesigned that were sold after August 20, 1989, and before September 1, 1994. This amount was to be paid to him after five years. Plaintiff gave lengthy testimony supporting his side of the case, but this was contradicted by Mowatt.
 
 
 8
 After hearing additional testimony from both sides, the jury returned a $3,000,000 verdict in plaintiff's favor. Defendant's principal contention is that it had never entered into any contract with plaintiff. In addition, defendant contends that any oral contract with plaintiff was somehow negated by the existence of a written contract with FSC. However, the jury believed plaintiff's testimony that he completed all of his engineering work pursuant to the oral agreement and not under any written contract with FSC. According to plaintiff, he did not perform any engineering services for FSC. His testimony shows that his duties with FSC were subsequent to the oral agreement for engineering services upon which he sued.
 
 Jury Decision
 
 9
 Despite Mr. Mowatt's contrary testimony, the jury believed plaintiff that there was an oral contract between him and Mr. Mowatt on behalf of Champion. Plaintiff showed that he was originally paid $5,000 on his work for defendant pursuant to his oral contract. The contract was also supported by plaintiff's testimony that he designed the MFI filters that were sold to Volkswagen, Chrysler, General Motors in addition to the Kleen Pak line. Part of plaintiff's engineering work for Champion was the production of drawings, specifications, bills of material and vendors. The jury could also believe that plaintiffs testimony that the original agreement for $100 per hour for engineering services was changed to 10% of the gross profits pursuant to agreement with Mr. Mowatt.
 
 
 10
 Defendant's argument that the oral contract was too indefinite and uncertain to be enforced as a matter of law must fail. The subject of the contract, the relevant period of time, the price to be paid and the time of payment were each identified. The fact that there was a dispute over certain categories of filters does not make the contract uncertain or indefinite.
 
 
 11
 The jury was entitled to believe either plaintiff's or Mr. Mowatt's version and chose to believe plaintiff. As shown, there was ample evidence of an oral agreement between plaintiff and defendant, and the jury was entitled to credit that evidence instead of defendant's contradictory testimony. In view of plaintiff's testimony about his work for Champion, the jury apparently concluded that it was engineering work as distinct from sales activities for FSC. While Mr. Mowatt disputed plaintiff's evidence that an engineering agreement had been reached with defendant, there was sufficient basis in the record to support the jury's verdict, and it is not for us to reweigh the evidence. Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir.1995).
 
 Jury instructions
 
 12
 Defendant seeks a new trial on the ground that the jury instructions regarding the plaintiff's burden of proof were erroneous. In Illinois, the test for determining the adequacy of jury instructions is whether the instructions given are sufficiently clear so as not to mislead the jury and whether they fairly and correctly state the relevant principles of law. Eaves v. Hyster Co., 244 Ill.App.3d 260, 262 (1st Dist.1993).
 
 
 13
 Our review of this issue is limited. See, Stachniak v. Hayes, 989 F.2d 914, 920 (7th Cir.1993). This Court looks, first, to "whether the instruction misstates or insufficiently states the law," and if the answer is affirmative, then we determine if the error prejudiced one of the parties. E.E.O.C. v. AIS Security Investigations, Ltd, 55 F.3d 1276, 1283 (7th Cir.1995). As this Court has emphasized before, "[w]ith instructions, we don't pick nits; we examine the whole of what was given and look for overall fairness and accuracy." Trustees of Indiana University v. Aetna Casualty & Surety Co., 920 F.2d 429, 437 (7th Cir.1990) (overruled on unrelated grounds by Watson v. Amedco Steel, Inc., 29 F.3d 274 (7th Cir.1994)).
 
 
 14
 The instructions concerning the burden of proof here are contained in plaintiff's instructions Nos. 7 and 8 (R. 67). These were taken from Illinois Pattern Jury Instructions, Third, 700.02 and 700.03. The trial judge gave an additional instruction defining the word "agreement" derived from Illinois Pattern Jury Instructions, Third, 700.07. These instructions adequately covered contract principles.
 
 
 15
 The court refused defendant's instructions that the jury should have been advised that plaintiff was required to prove that he had a separate contract apart from his written contract with FSC, but there was no confusion between the oral contract upon which this suit was based and FSC's written contract with defendant. Even Mr. Mowatt testified that there was no dispute over the FSC contract, but only over the existence of an oral agreement between the parties. The jury was instructed that it had to find an oral contract in order to decide for plaintiff and that its existence was disputed by defendant. Consequently no further instruction was needed regarding the distinction between the contract on which plaintiff sued and the written contract with FSC.
 
 
 16
 Finally, defendant contends that the jury should have been instructed to consider only work performed by plaintiff after August 1989. Since the oral agreement upon which plaintiff sues was not so limited, defendant's proposed instruction would have been improper. In sum, we conclude that the jury was properly instructed and that defendant's proposed instructions were' unnecessary.
 
 
 17
 The verdict was supported by the evidence. Therefore the judgment is affirmed.