124 F.3d 204
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Emily HARRINGTON, Plaintiff-Appellant,
v.
Cheryl ESGAR, et al., Defendants-Appellees.
 No. 96-1942.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 7, 1997.*
Decided Aug. 12, 1997.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 94-1045 Michael M. Mihm, Chief Judge.
 Before POSNER, Chief Judge, EASTERBROOK, Circuit Judge and MANION, Circuit Judge.
 
 ORDER
 
 1
 Emily Harrington, a state prisoner proceeding pro se, sued various officials at the Dwight (Illinois) Correctional Center for violating her civil rights. 42 U.S.C. §§ 1981, 1983. The district court directed a verdict for the defendants on most of the claims; a jury found in favor of the only remaining defendant. Harrington appeals, arguing that the evidence was insufficient to support the verdict; that the district court erred in dismissing claims that her due process rights were violated, that she was denied access to the courts, and that defendants retaliated against her for exercising her constitutional rights; and that the trial was unfair because the district court refused to appoint an attorney for her We affirm.
 
 
 2
 Harrington's complaint is based on two incidents that occurred at the prison. Harrington fell ill and received a medical leave, or "lay-in," from the prison nurse. The lay-in excused her from her work assignment in the prison kitchen. Harrington, who served her fellow inmates as a law clerk/writ-writer, had a pass to the prison library. Because she was working on at least two lawsuits, including one which had to be filed the next day, she went to the prison law library to complete her research. Sharon Wahl, supervisor of the Food Service Department where Harrington worked, telephoned her in the library later that day, and insisted that if she was well enough to do legal research, she was well enough to work. Harrington insisted, correctly, that the medical lay-in prohibited her from handling food, and added that she was only in the library because she was facing court deadlines. Wahl had prison security officers take Harrington away from the library and escort her back to her living unit. Later that day security made Harrington leave the unit to retrieve her legal papers. Over the next few days, Harrington persisted in staying away from her work assignment and going to the law library, while Wahl, and later Cheryl Esgar, Harrington's immediate supervisor, persisted in requiring Harrington to return to her kitchen work, and tried to revoke her medical lay-in. Esgar wrote a number of disciplinary reports against Harrington. Harrington, who is black, claimed she knew of instances where white inmates on medical lay-in were allowed to use the law library and leave their living units while on lay-in, without being charged with disciplinary violations.
 
 
 3
 In another incident Julie Terlep, a paralegal in the prison library, asked Harrington and Kathy Bowen, a white inmate, to help her retrieve some boxes of papers from Bowen's residence. Though the record is not entirely clear, it seems that Terlep got in some trouble for not following prison procedures in bringing the inmates with her. The next day, Terlep filed a disciplinary report against Harrington, but not against Bowen. As a result of Terlep's report, James Darden and Kinda Pellino, security officers at Dwight, ordered Harrington permanently out of the law library, confiscated her legal materials, filed a report which led to Harrington being placed in segregation for having excessive personal property, and prevented her from doing legal work for other inmates.[1] Harrington's court-appointed public defender complained to prison officials that the confiscation of legal materials was hindering the preparation of a petition for post-conviction relief.
 
 
 4
 Harrington filed suit against Wahl, Esgar, and Warden Gwendolyn Thornton, claiming that they violated her right to equal protection by treating her differently than similarly situated white inmates; attempted to deny her access to the courts; and denied her due process in prison disciplinary hearings. She added claims of retaliation and equal protection violations against Terlep, Darden, and Pellino; and a charge of denial of access to the courts against Darden and Pellino. The district court dismissed the denial of due process charges for failure to state a claim, dismissed Thornton because she was not personally responsible for the alleged constitutional violations, Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996), and dismissed the claim of denial of access to the courts against Wahl and Esgar. The court let the equal protection violations against Wahl, Esgar, and Terlep, as well as the charges of retaliation and denial of access to the courts against Terlep, Darden, and Pellino, proceed to trial. Before trial, Harrington voluntarily dismissed her complaint against Wahl. At trial, after the close of Harrington's case in chief, the district court directed a verdict in favor of defendants on all remaining claims except the equal protection allegation against Terlep. The jury then found in favor of Terlep. Harrington appeals.
 
 
 5
 Harrington's principal contention is that the defendants should have been found guilty. We construe this as a claim that the evidence was insufficient to support the verdict against Terlep, and that the district court should not have directed verdicts against the other defendants. The test in this circuit for reviewing a jury verdict on appeal is "whether there is a reasonable basis in the record for the verdict.... If this test is met, we will not reweigh the evidence but will let the verdict stand." Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir.1995) (internal quotation omitted). The only evidence in the trial record that supported Harrington's case is that Harrington is an African-American and Bowen, the inmate whom Terlep failed to report, is not. A rational jury could not find that distinction sufficient to support an inference of racial animus, which is necessary to an equal protection claim. See Minority Police Officers Ass'n of South Bend v. City of South Bend, 801 F.2d 964, 967 (7th Cir.1986). Moreover, Harrington argues only that she submitted enough evidence to prove her case. That argument is insufficient on appeal: she must show that a reasonable jury could not find against her. Gorlikowski, 52 F.3d at 1446.
 
 
 6
 Neither were the directed verdicts improper. In reviewing a directed verdict, we determine whether there is evidence to support Harrington's claim on which a jury could properly have found in her favor, and review the evidence in the light most favorable to Harrington. Fed.R.Civ.P. 50(a); The Hammond Group, Ltd. v. Spalding & Evenflo Cos., 69 F.3d 845, 484 (7th Cir.1995). Harrington herself conceded at trial that there was not enough evidence to support the equal protection charge against Pellino. Similarly, because no evidence suggested that either Esgar or Darden knew that white inmates had been involved in the same activity for which Harrington was being disciplined, neither is there evidence that racial animus motivated them. The directed verdict on the issue of denial of access to the courts was also correct, because Harrington failed to demonstrate that the confiscation of her legal materials caused any actual injury. Lewis v. Casey, 116 S.Ct. 2174, 2180 (1996). Harrington alleged that her petition for post-conviction relief would have been successful if there had not been a delay in getting the necessary documents to her attorney, but failed to support that allegation with evidence in the record. Finally, the most problematic case, as the district court recognized, was the retaliation claim. There was some evidence that Terlep (by filing a disciplinary report) and Darden (by shaking down Harrington's living unit) retaliated against Harrington. The evidence, however, only suggested that they did so because they were angry that Terlep had gotten in trouble, not because Harrington had exercised her constitutional rights. Consequently, there was no evidence to support a claim under § 1983.
 
 
 7
 Harrington also argues that the district court wrongly dismissed for failure to state a claim her complaints that the prison disciplinary hearings denied her due process; and that Esgar and Wahl denied her access to the courts by disciplining her for her medical lay-in. We find no such error. First, the district court correctly concluded that the disciplinary hearings provided Harrington with all the process due to her under Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Second, Harrington failed to allege that Esgar and Wahl's restriction of her access to the prison library and her legal papers caused any actual injury. Prisoners have no inherent right of access to a law library, or to legal assistance. Lewis, 116 S.Ct. at 2180. Nor do Harrington's activities as a writ-writer entitle her to special treatment: as prisoners have no right of access to legal assistance, so they have no right to have a particular person to whom they may turn for legal advice. Neither do Harrington's pleadings suggest that any of her "clients" were unable to obtain legal redress because of restrictions on her activities.[2] Without any allegation of actual injury, her complaint of access to the courts is doomed. Id.
 
 
 8
 Finally, Harrington complains that she was unable to present her case adequately, because the district court refused to appoint counsel for her. Indigent litigants have no constitutional right to appointment of counsel in a civil case. Forbes v. Edgar, 112 F.3d 262, 264 (7th Cir.1997). The fact that a pro se plaintiff is forced to litigate against an experienced attorney is not, of itself, sufficient reason to appoint counsel. The district court concluded that the issues involved in Harrington's suit were not so complex that they required trained counsel, and that in light of the court's policy of giving wide latitude to pro se litigants, Harrington was capable of presenting her own case. Particularly because the trial transcript corroborates the court's latitude toward Harrington, and because the record does not suggest that Harrington "would have had a reasonable chance of winning with a lawyer at her side," we find that the district court did not abuse its discretion by refusing to appoint counsel. Id.
 
 
 9
 Harrington presents several other issues for the first time on appeal. Because she did not raise these matters before the district court, she has waived them. Zemke v. City of Chicago, 100 F.3d 511, 514 (7th Cir.1996).
 
 
 10
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Therefore, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 Harrington filed a grievance regarding these actions, which resulted in a ruling that the order placing her in segregation be expunged, and her personal property, including personal legal materials, be returned to her
 
 
 [2]
 For the same reasons, the district court properly granted the defendants' motion in limine barring Harrington from presenting evidence that she was kept from doing legal work for other prisoners. And even if Harrington succeeded in showing that restrictions placed on her ability to do legal research caused injury to other prisoners, it is doubtful that Harrington has standing to assert a claim on behalf of her "clients." See Gometz v. Henman, 807 F.2d 113, 115 (7th Cir.1986)