165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert C. GONZALES, Plaintiff-Appellant,
v.
CHECKER TAXI COMPANY and Checker Taxi Association
Defendants-Appellees.
 No. 97-4256.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 10, 1998.
Decided Dec. 11, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 94 C 584. James F. Holderman, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JOEL M. FLAUM, Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Robert Gonzales appeals from a judgment in favor of the defendants in this action alleging that the defendants willfully violated the automatic stay in bankruptcy actions, 11 U.S.C. § 362, when they towed his taxi. Gonzales' brief lists twenty-one issues on appeal, but in our view these boil down to four issues: the sufficiency of the evidence, the denial of Gonzales' motion to amend, the district court's exclusion of evidence, and the district court's alleged bias. We find no error and affirm.
 
 I. Facts
 
 2
 When longtime cab driver Robert Gonzales won a taxi license, commonly known as a medallion, in a City of Chicago lottery, he purchased a used cab from Checker Taxi Company (Checker). Gonzales financed the transaction by taking out a loan from Checker secured by the car. Gonzales also joined the Checker Taxi Association (the Association), which provides various services to independent cab operators, including insurance, repair services, and loans collateralized by medallions. Although a separate corporation from Checker, the Association at the time of the events in this case functioned as collection agent on Checker's loans. The Association also licensed Checker's distinctive cab colors to members of the Association. Beginning in 1989, Gonzales took out a series of loans from the Association secured by his medallion.
 
 
 3
 In the fall of 1991, Gonzales' car broke down. The car stayed in the repair shop until December 1991 because Gonzales did not have the money to pay for repairs. While the car was in the shop, Gonzales fell behind on his payments to the Association. On December 11, the Association terminated his insurance policy and his license to use Checker's colors. The Association notified Gonzales that these terminations would be reported to the City. City ordinances require all cab owners to register their colors and to carry liability insurance, so Gonzales was unable to use his cab unless he could obtain insurance elsewhere and find new colors. One week later, on December 18, Gonzales filed for bankruptcy. After filing, Gonzales paid the repair shop and obtained his cab, which he did not operate. Instead, he parked the car on a lot at the Cabrini Green housing project. The car stayed on this lot until January 31, 1992.
 
 
 4
 When the Association found out about the bankruptcy, it terminated its collection efforts against Gonzales. But on the morning of January 31, 1992, Checker received a call reporting that one of its cars had been stolen, and had been found in Cabriri Green. Checker immediately dispatched a tow truck to pick up the car. The car was Gonzales' cab, and was parked where Gonzales had left it.
 
 
 5
 At a meeting of creditors in the bankruptcy case on February 13, 1992, Gonzales informed Bernard Block, counsel for both Checker and the Association, that his car had been towed. Block then immediately offered to return the car to Gonzales. Although at the meeting Block and Gonzales discussed the logistics of picking up the car, Gonzales never did pick up his car. Instead, on March 2, 1992, Gonzales filed an adversarial complaint alleging that Checker had violated the automatic stay. In July 1992, Gonzales' bankruptcy proceeding was dismissed in its entirety on the trustee's motion because Gonzales had failed to contribute funds to the bankruptcy plan. The adversary case was dismissed along with the main bankruptcy proceeding.
 
 
 6
 Gonzales filed the complaint in this action in January 1994. The complaint alleged only that the defendants had violated the automatic stay by repossessing his cab and asked for $250,000 in damages. Gonzales moved to amend his complaint to add a fraud claim in September 1996, but Magistrate Judge Pallmeyer, who had been assigned to prepare the pretrial order, recommended that leave to amend be denied because the proposed claim was irrelevant to the claim in Gonzales' original complaint. Magistrate Judge Pallmeyer also recommended that Gonzales' damages be limited to the period between the tow and the February 13 offer to return the car. The district judge accepted the magistrate's recommendations. In October 1997, the case was tried to a jury before Judge Holderman. Gonzales represented himself at trial. The jury found in favor of the defendants.
 
 II. Analysis
 
 7
 As a preliminary matter, the defendants have moved to strike various items in Gonzales' appendix and all of his exhibits. The motion is granted as to the items described in paragraphs 3 through 11 of the motion because the defendants correctly note that these items are outside of the record on appeal. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 795 (7th Cir.1997). Because the items described in paragraph 2 of the motion are part of the record, we deny the motion as to those items.
 
 
 8
 Gonzales' first argument is that he presented sufficient evidence to justify a verdict in his favor. We will uphold a jury verdict when it has a "reasonable basis in the record." Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir.1995) (citation omitted). All evidence and reasonable inferences from the evidence are construed in favor of the verdict. See Haschmann v. Time Warner Entertainment Co., L.P., 151 F.3d 591, 593 (7th Cir.1998).
 
 
 9
 To recover under § 362, Gonzales must show that the defendants willfully violated the automatic stay and demonstrate actual damages. See 11 U.S.C. § 362(h). Gonzales argues that the defendants acted willfully because they took his car and medallion and never returned the car to him even though the bankruptcy judge ordered them to do. Further, Gonzales contends that the defendants' sale of his car and medallion after dismissal of the bankruptcy case was dismissed shows the defendants willfully violated the stay. These arguments are meritless. First, the bankruptcy judge never ordered the defendants to return the car to Gonzales. What Gonzales characterizes as a court order was actually only critical comments to the defendants' counsel at a status hearing in the bankruptcy case. Second, the sales of the car and medallion were not violations of the automatic stay, because the stay was terminated automatically when the bankruptcy case was dismissed. See 11 U.S.C. § 362(c)(2)(B). More importantly, we cannot disturb this jury verdict because Gonzales did not present sufficient evidence to prove that the tow of the car was a willful violation of the stay. Checker presented undisputed evidence at trial that it towed the car because it had been reported stolen and found parked in a lot in the Cabrini-Green housing project. Moreover, the president of the Association testified that the tow was in no way connected to its collection efforts on behalf Checker or the Association. He testified that those efforts ceased while the bankruptcy case was pending. Given this evidence, Gonzales' challenge to the verdict fails.
 
 
 10
 Gonzales complains about various pretrial rulings as well. First, Gonzales challenges the district court's denial of his motion to amend his complaint. In September 1996, over two years after Gonzales filed his original complaint and after the close of discovery, Gonzales moved to amend his complaint to add a fraud claim against the Association and a former president of the Association. Gonzales' proposed new claim was that the Association had "made a serious effort" to sabotage the city's program to issue taxi medallions to independent cab drivers. The district court denied the motion because none of the new allegations related to the events in Gonzales' original complaint, and because the allowing amendment would have unduly delayed the trial and prejudiced the defendants. We review the denial of leave to amend for abuse of discretion. See Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir.1998).
 
 
 11
 The district court did not abuse its discretion in denying leave to amend. Gonzales' new allegations had nothing to do with the tow of his cab, and were untimely. Gonzales admits that he knew about the facts involved in his proposed amendment nearly one year before he sought to amend. In these circumstances, denial of amendment was not an abuse of discretion. See Clay v. City of Chicago Dep't of Health, 143 F.3d 1092, 1094 (7th Cir.1998); Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428-29 (7th Cir.1993).
 
 
 12
 Gonzales next argues that the district judge erred by excluding damages evidence and by excluding four of Gonzales' witnesses from testifying. We need not consider the exclusion of damages evidence because Gonzales presented insufficient evidence of willfulness, thus rendering the damages issue irrelevant. Gonzales' other evidentiary challenge also may be swiftly denied. The district court excluded Gonzales' witnesses because their testimony related to the fraud claim that the court had refused to allow Gonzales to present. As such, their testimony would have been irrelevant. The district court did not abuse its discretion by refusing their testimony. See Gagan v. American Cablevision, Inc., 77 F.3d 951, 967 (7th Cir.1996).
 
 
 13
 Finally, Gonzales argues that the magistrate judges' recommendation to exclude the witnesses demonstrates bias, but an adverse evidentiary ruling alone does not constitute impermissible bias. See Marozsan v. United States, 90 F.3d 1284, 1290 (7th Cir.1996) (per curiam). Gonzales has not shown any reason to suggest that either Magistrate Judge Pallmeyer or Judge Holderman was anything but impartial to him, particularly in light of their willingness to bend procedural rules in Gonzales' favor because he proceeded pro se.
 
 
 14
 MOTION TO STRIKE GRANTED IN PART; AFFIRMED.