ANNA GAIDO, ADMINISTRATRIX AD PROSEQUENDUM AND
GENERAL ADMINISTRATRIX OF THE ESTATE OF PETER
GAIDO, PLAINTIFF–APPELLANT, v. SHELDON WEISER, DE-
FENDANT–RESPONDENT.

Argued May 8, 1989—Decided June 15, 1989.

*Zane Bouregy* argued the cause for appellant.

*Milton Gurny* argued the cause for respondent (*Hein, Smith, Berezin, Maloof & Spinella,* attorneys; *Milton Gurny* and *Carla H. Madnick,* on the brief).

PER CURIAM.

The judgment is affirmed substantially for the "plain error" reason expressed in the majority opinion of the Appellate Division. We agree that "[t]o now reverse this judgment because the trial court on its own did not define proximate cause in terms of 'substantial possibility'. * * * would also offend fundamentally sound principles of appellate review and would be 'manifestly unfair to the defendant ... to say nothing of the trial judge.' " 227 *N.J.Super.* 175, 201 (1988) (quoting *Rochinsky v. State*, 110 *N.J.* 399, 431 (1988) (Clifford, J., dissenting)).

As the majority of the Appellate Division noted, relief under the plain error rule, at least in civil cases, is discretionary and "should be sparingly employed." *Ford v. Reichert*, 23 *N.J.* 429, 435 (1957). Especially is that so when, as here, the reviewing court invokes the rule, on its own motion, to review the error, and "neither party had the opportunity of presenting its views before [it] found [itself] bound by the court's edict." *Ibid.*

We express no view on the substantive issues in dispute except to note that we are not convinced that " 'substantial justice' has not been done as a result of the erroneous action." *Id.* at 434 (quoting *In re Stern*, 11 *N.J.* 584, 590 (1953)).

HANDLER, J., concurring.

This case involves a medical malpractice action against a psychiatrist, Dr. Weiser, for the suicide death of plaintiff Anne Gaido's husband, Peter Gaido. Mr. Gaido was suicidal and had been hospitalized for this condition. Dr. Weiser agreed to provide follow-up psychiatric care for Mr. Gaido after he was released from a psychiatric hospital. Mr. Gaido allegedly committed suicide on the day before his appointment with Dr. Weiser. Plaintiff alleges that defendant's refusal to see decedent prior to his scheduled appointment after learning that decedent's symptoms of depression had returned was negligent conduct that contributed to causing her husband's death. Defendant claims that he did not breach the proper duty of care

and that even if he was negligent, his conduct was not a proximate cause of decedent's death.

After a three week trial, the jury found by a vote of 5–1 that Dr. Weiser was negligent but found by a vote of 5–1 that the negligence was not a proximate cause of Peter Gaido's death. The trial court charged the jury on the definition of proximate cause using Model Jury Charge 7.11 and relevant New Jersey caselaw as a reference. The court stated:

> It is the duty of the plaintiff to establish by a preponderance of the evidence that the negligent conduct of the defendants or either of them was "A proximate cause" of Mr. Gaido's death. Now, the term "A proximate cause" means that the negligent conduct was an efficient cause of his death, that is, a cause which necessarily set the other causes in motion and was a substantial factor in bringing about his death. "A proximate cause" is any cause which in a natural and continuous sequence produces the result complained of. Without which, the result would not have occurred. To be "A proximate cause" the negligence of a defendant need not be the only cause of Mr. Gaido's death, there can be other causes as well but to be "A proximate cause" the negligence must be at least a substantial factor in bringing about or causing. that result.

The trial court never considered charging the jury on the definition of proximate cause using the "lost chance exception" for medical malpractice cases recognized in *Evers v. Dollinger*, 95 *N.J.* 399 (1984), and plaintiff never asked for this type of charge.

On appeal to the Appellate Division, Judge Shebell dissented from the majority's affirmance of the trial court's denial of plaintiff's motion for a new trial because he found "the proximate cause charge given by the trial judge was inappropriate and unworkable when applied to a malpractice theory of failure to treat and diagnose." 227 *N.J.Super.* 175, 202 (1988). According to Judge Shebell, "the jury finding that defendant failed in his duty to diagnose and treat plaintiff's condition put the case in a posture where plaintiff only had to show that there was a substantial possibility that decedent's death could have been avoided if proper psychiatric care had been rendered," *id.* at 203–04 yet nowhere was this principle conveyed in the jury charge. In my opinion, Judge Shebell correctly charac-

terized this case as one that requires the "substantial factor exception" to proximate cause jury instruction.

To recover in a malpractice lawsuit, plaintiff must prove that the professional negligence was a proximate cause of plaintiff's injuries. Proximate cause has been properly defined as being "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Fernandez v. Baruch*, 96 *N.J.Super.* 125, 140 (App. Div.1967), *rev'd on other grounds*, 52 *N.J.* 127 (1968). Proximate cause may be a contributing cause, rather than a sole cause of injury.

A plaintiff's burden of proving proximate causation, however, has been relaxed in certain medical malpractice cases based upon *Restatement (Second) of Torts* § 323(a) (1965), which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increased the risk of such harm....

This theory of causation involving an increased risk of harm is sometimes referred to as the doctrine of "lost chance of survival" or the "substantial factor exception." It came about because "courts have come to recognize that the difficulties of identifying, defining, and proving injury in certain types of medical malpractice cases justifies the application of a standard of causation that is more flexible than that used in conventional tort claims." *Evers v. Dollinger, supra,* 95 *N.J.* at 413; *see Jones v. Montefiore Hosp.,* 494 *Pa.* 410, 431 *A.*2d 920 (1981); *Hamil v. Bashline,* 481 *Pa.* 256, 392 *A.*2d 1280 (1978).

This doctrine was found applicable to medical malpractice cases by this Court in *Evers v. Dollinger, supra,* 95 *N.J.* at 417. The Court held that a "plaintiff should be permitted to demonstrate, within a reasonable degree of medical probability, that ... defendant's failure to make an accurate diagnosis and to

have rendered proper treatment increased the [plaintiff's] risk of [injury] ... and that such increased risk was a substantial factor in producing the condition from which plaintiff currently suffers." *Id.* at 417. Thus, a plaintiff must establish that defendant had a duty to try to save plaintiff and that there was a substantial possibility that defendant's actions might save plaintiff from death. *Hake v. Manchester Township,* 98 *N.J.* 302, 311 (1985).

In this case, plaintiff's theory of medical malpractice—that her husband died because of an impaired judgment due to his mental illness, which was negligently treated by defendant—fits within the *Evers* theory of increased risk of harm justifying the "lost chance of survival" modification of traditional proximate causation. The evidence presented by plaintiff, if credited by the jury, indicated that Mr. Gaido had a condition involving a grave risk of harm—he was suicidal. Additionally, defendant had a duty to treat this condition and there was a substantial possibility that proper treatment would have reduced or eliminated the risk of suicide. Finally, the failure on the part of defendant to undertake such treatment in the circumstances could have been found to increase the risk of suicide, and that failure and increased risk of harm could have been determined to be a substantial factor in the chain of causation eventuating in Mr. Gaido's suicide.

Under the circumstances a proper charge on proximate causation would have incorporated the *Evers* doctrine. Such a charge would instruct the jury to determine whether defendant was guilty of malpractice, that is, whether he acted negligently toward the plaintiff; and, if so, whether plaintiff proved, within a reasonable degree of medical probability, that defendant's failure to render proper treatment increased plaintiff's risk of suicide. In this vein, the jury should be asked to consider whether there was a substantial possibility based on reasonable medical evidence that if defendant had rendered proper and adequate medical care and treatment, the ultimate harm, Mr. Gaido's suicide, would have been averted. The jury should also

be instructed to determine whether the increased risk of suicide by Mr. Gaido caused by Dr. Weiser's failure to provide adequate medical treatment was itself a substantial factor that contributed to Mr. Gaido's suicide. Finally, the jury should clearly have been given to understand that if Dr. Weiser's negligent failure to provide adequate medical care was a substantial factor that was a contributing cause of Mr. Gaido's suicide, even though it was not the sole or primary cause, then liability for the suicide could be imposed on Dr. Weiser. This type of charge would more completely and fairly provide the legal framework within which the jury's factual determinations should have been made and plaintiff's claims resolved.

Although I find the proximate-cause jury instruction that was given to be wanting, I am constrained to agree with the majority's view that it is not clear that " 'substantial justice' has not been done as a result of the erroneous action." *Ford v. Reichert*, 23 *N.J.* 429, 434 (1957) (quoting *In re Stern*, 11 *N.J.* 584, 590 (1953)). See *ante* at 311. In this case none of the parties perceived the issues as implicating the increased-risk-of-harm doctrine and the lost-chance-of-survival theory of causation; the plaintiff did not ask for such a jury charge and did not object to the jury charge based on traditional definitions of proximate causation, and, understandably in the circumstances, the trial court did not on its own define proximate cause in terms suggested by *Evers*. These are strong indications that the presentation of the case to the jury was not considered by those closest to the litigation to be misleading.

Moreover, it does not appear that the jury was substantially misled or seriously diverted from a careful consideration of the critical evidence and the ultimate issues. It had a full presentation of the evidence that was further explained and amplified by counsel's summations. The jury was invited by the charge on causation, albeit in conventional parlance only, to consider that the negligence of the defendant in terms of the failure to provide adequate medical treatment and, further, that such negligence need be found only to be a contributing cause of

decedent's death. It was thus asked, albeit indirectly, to consider the role played by Dr. Weiser's failure to provide proper treatment in the causation of Mr. Gaido's suicide. Moreover, contributory negligence, a potentially confusing issue that can prejudice a plaintiff in this kind of case, was not presented to the jury. *See, e.g., Cowan v. Doering,* 111 *N.J.* 451 (1988). Hence, even if Mr. Gaido's underlying condition, his suicidal tendencies, was determined by the jury to be a proximate cause of his death, the jury was not invited to consider this to be a form of comparative negligence that would bar or reduce the fault otherwise attributable to Dr. Weiser.

Thus, one cannot readily conclude that the jury's ultimate determination constitutes an unjust result under circumstances sufficient to satisfy the strict standard of the plain error rule. *See R.* 1:7–2; *R.* 2:10–2; *State v. Hock,* 54 *N.J.* 526, 538 (1969), *cert. den.,* 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970).

In sum, I conclude that this case falls within the law established in *Evers,* but, under the specific facts, that the error by the trial court does not constitute plain error requiring reversal. I therefore concur in the judgment of the Court.

Justice STEIN joins this opinion.

HANDLER and STEIN, JJ., concurring in the result.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.