**Donna Joy REED, et al., Plaintiff(s),**

v.

**Martin BINDER, M.D., et al., Defendant(s).**

**Donna Joy REED, et al., Plaintiff(s),**

v.

**Martin BINDER, M.D., et al., Defendant(s).**

**Donna Joy REED, et al., Plaintiff(s),**

v.

**Martin M. BINDER, M.D., et al., Defendant(s).**

**Civ. Nos. 92–1990 (JHR), 92–3180 and 93–3394.**

United States District Court, D. New Jersey.

March 27, 1996.

John F. Kearney, III, Mount Holly, New Jersey, for the Plaintiffs.

Louis J. Bizzarri, Assistant United States Attorney, Camden, New Jersey, for Defendant United States of America.

Richard L. McMonigle, McKissock & Hoffman, Mount Holly, New Jersey, for Defendants Joseph Krotec, M.D., Jack Jenofsky, M.D., and Richard Krotec, D.O.

John Z. Jackson, Jackson, Vaurio & Buckley, Princeton, New Jersey, for Defendant Robert Siefring, M.D.

Carolyn Sleeper, Parker, McCay & Criscuolo, Marlton, New Jersey, for Defendants Memorial Hospital of Burlington County and Susan Inniss, M.D.

### OPINION

KUGLER, United States Magistrate Judge:

Plaintiffs bring this action against the defendants alleging that a number of medical professionals and their employees negligently failed to diagnose the cancer that ultimately killed Donna Joy Reed. Presently before the court is the motion by the plaintiffs to require that each party bear the costs for the appearance and deposition of that party's expert witness. For the reasons that follow, the plaintiffs' motion will be granted.

Reed was a disabled and retired veteran of the United States Marine Corps. In January, 1986, she consulted Jeanne Cunningham, a certified nurse practitioner, at the Veterans Affairs Medical Clinic in Philadelphia with a complaint of vaginal warts. Cunningham referred Reed to a clinic at the United States Naval Hospital in Philadelphia.

Thereafter began a series of visits to various doctors. Different treatments were performed on Ms. Reed over the years. A pathology report from a biopsy in May, 1990, revealed she then suffered from moderately differentiated squamous cell carcinoma with involvement of deep and lateral margins. On June 6, 1990, she underwent massive and radical surgery. Five positive lymph nodes were found. She remained in the hospital for two months. After discharge, she received radiation therapy. Tragically, Ms.

Reed died at her home on August 10, 1994, from the cancer. She is survived by her husband, John Reed, and two children, Donna Harris and William Harris.

John Reed states that their combined family income before Donna's death was $1,956 per month from his employment and their separate Veteran's Administration pensions and social security benefits. Since her death, his resultant severe depression caused him to take medication which prevents him from continuing his employment (operating heavy machinery). Donna Harris, who lives with her stepfather John Reed, cannot maintain any employment because of severe emotional and perceptual problems. The family income since Ms. Reed's death is $960 per month. John Reed also states he has exhausted his savings and sold some of his tools and his late wife's car. William Harris lives in Delaware with his wife and, as a student, earns approximately $330 per week. Plaintiffs' expert witness is Edward Podczaski, M.D., who is charging a reduced rate of $100 per hour for his time reviewing the matter and testifying at trial.

The defendants retained experts to testify on their behalf at trial. The United States has two experts, Martin Weisberg, M.D., and Charles J. Dunton, M.D. Dr. Weisberg submitted a report dated November 25, 1994. Of its four pages, only two discuss the facts and his opinion. He testified at deposition on September 8, 1995. He charges $250 per hour.[1] Dr. Dunton submitted reports dated December 15, 1994 (with four paragraphs of fact and analysis), September. 20, 1995 (one paragraph) and October 16, 1995 (two sentences). He testified at deposition on October 16, 1995, and charges $250 per hour.

Defendants Krotec and Jenofsky also retained two experts, Joseph Riggs, M.D., and John Mikuta, M.D. Dr. Riggs submitted a report dated December 28, 1994, of eight (8) pages and testified at deposition on October 6, 1995. He charges $300 per hour. Dr. Mikuta's report of 3½ pages is dated August 23, 1995. He testified at deposition on Octo-

ber 19, 1995, and charges $200 or $250 per hour (he couldn't recall the precise figure).

Michael Goldberg, M.D., is defendant Siefring's expert. His three paragraph report is dated August 15, 1995. Counsel took his deposition on September 15, 1995. His hourly rate was never revealed but apparently he charged a flat fee of $900 for his testimony.

Defendants Memorial Hospital and Innis retained Robert Giuntoli, M.D., as their expert. His three page report dated February 24, 1995, contains one page of facts, analysis and opinion. His deposition took place on November 16, 1995, and he charges $250 per hour.

The length of the depositions is not clear from the transcripts. It seems those of Dr. Giuntoli, Dr. Mikuta and Dr. Riggs took 3½ hours, 5½ hours and 5 hours respectively. There is no record for Doctors Goldberg, Weisberg or Dunton. Plaintiffs' counsel avers that the depositions ranged from three hours to six hours. Comparing the length of the transcripts indicates that is accurate.

Plaintiffs claim defendants should bear the costs of these depositions for two reasons. First, requiring the impoverished survivors of the decedent to bear these costs results in "manifest injustice." Second, the defense expert reports revealed so little information that plaintiffs were compelled to take these depositions to learn what the experts would testify to at trial and to adequately prepare for cross examination.

### MANIFEST INJUSTICE

The Federal Rules of Civil Procedure provide the mechanism for taking discovery from experts witnesses. Rule 26(b)(4)(A) provides:

A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.

---

1. Plaintiffs do not contend that any of the hourly rates charged by the defense experts is unreason-

able. *See* Fed.R.Civ.P. 26(b)(4)(C).

That Rule must be read in conjunction with Rule 26(b)(4)(C):

> Unless manifest injustice would result ... the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery....

■ Normally then, the party taking the expert's deposition will bear the costs charged by the expert for the testimony. *See* Advisory Committee Notes to 1993 Amendments, 146 F.R.D. at 638 ("the expert's fees for the deposition will ordinarily be borne by the party taking the deposition.") There is no definition of "manifest injustice." The phrase first appeared in relation to expert testimony with the 1970 Amendments to the Federal Rules of Civil Procedure. This was the first time the Rules expressly permitted discovery from experts. *See* Advisory Committee Notes to 1970 Amendments, 48 F.R.D. 503–504.

■ A concern of the Advisory Committee at that time was the perceived unfairness that would result from permitting one side to obtain without cost the benefit of an expert's work for which the other side paid, often a substantial sum. *See Lewis v. United Air Lines Transp. Corp.*, 32 F.Supp. 21 (W.D.Pa. 1940); *Walsh v. Reynolds Metals Co.*, 15 F.R.D. 376 (D.N.J.1954); Advisory Committee Notes to 1970 Amendments, 48 F.R.D. 505. Thus developed the requirement for paying fees and expenses to the other party or its expert.[2] The Committee further wrote:

> Even in cases where the court is directed to issue a protective order, it may decline to do so if it finds that manifest injustice would result. Thus, *the court can protect, when necessary and appropriate, the interests of an indigent party.*

*Id* (emphasis added). In interpreting the Rules, the Advisory Committee Notes, though not conclusive, are a very important source of information and should be given considerable weight. *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946). They provide something akin to a legislative history of the Rules. 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d, § 1029.

There is very little case law interpreting the portion of the Rule at issue here. Defendant cites *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 879 (9th Cir. 1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987), which merely states the general rule that a court must find manifest injustice before it can shift the normal allocation of the fees for an expert's deposition. There is no analysis of "manifest injustice." Plaintiffs rely on *Work v. Bier*, 107 F.R.D. 789 (D.D.C.1985) where in *dicta*, the court wrote:

> The Magistrate fully agrees with counsel for the defendants to the effect that the universally accepted rule in federal litigation is that, in the absence of special circumstances (such as an impoverished plaintiff and a very affluent defendant), a party seeking discovery must go where the desired witnesses are normally located....

*Id.* at 793 n. 4. Plaintiffs equate their "special circumstances" with "manifest injustice."

Neither case is particularly helpful in defining "manifest injustice," but that phrase is also found in Rule 16(e) which permits amendment of a final pretrial order "only to prevent manifest injustice." Again, the cases do not provide an acceptable working definition of the phrase—but clearly it is a "stringent standard." *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir.1995). As the Advisory Committee Note to Rule 16(e) states:

> In the case of a final pretrial order, however, a more stringent standard is called for, and the words "to prevent manifest injustice," which appeared in the original rule, have been retained. They have the virtue of familiarity and adequately describe the restraint the trial judge should exercise.

Most courts balance various factors when considering a Rule 16(e) modification. According to *Gorlikowski, supra*, the court must "weigh the possible hardships imposed on the respective parties ... [and] balance the need for doing justice on the merits between the parties ... against the need for

---

**2.** The Committee referred to this as a "protective   order."

maintaining orderly and efficient procedural arrangements." 52 F.3d at 1444. Thus, this court must exercise restraint while balancing the respective hardships.

■ By its terms, Rule 26(b)(4)(C) permits exceptions to the normal course of payment of expert's fees for deposition testimony. The court finds that this case presents one of those rare situations where manifest injustice would result if these impoverished plaintiffs had to pay the six (6) defense experts for their testimony at deposition. Bearing in mind that each Rule "shall be construed and administered to secure the just, speedy and inexpensive determination of every action," Fed.R.Civ.P. 1, the court concludes that the imposing economic obstacle facing these plaintiffs seeking redress for the death of their wife and mother (and chief financial support) requires that these costs be shifted to the defendants.

■ The court understands what defense counsel refer to as "the reality of how litigation is funded," but the court has no information on the fee arrangement between the plaintiffs and their attorney, and under any circumstance the client remains responsible for the costs of the litigation.[3] Accordingly, the plaintiffs' application pursuant to Fed. R.Civ.P. 26(b)(4)(C) will be granted, and the defendants are ordered to pay the fees charged by their experts for their deposition testimony.

---

3. That a party must pay at least a portion of the fees charged by its expert for the deposition taken by the adversary is not unusual. Where the expert charges more than what a court determines is a "reasonable" fee, the party retaining that expert must pay the amount over and above the "reasonable" rate. *See Schroeder v. Boeing Commercial Airplane Co.*, 123 F.R.D. 166 (D.N.J. 1988).

4. Though suit was filed before the effective date of Rule 26(a)(2)(B), it is nevertheless applicable to this case. By Order of the Supreme Court, the amended rules "... shall take effect on December 1, 1993 and shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." The latter situation is true here, for expert discovery did not commence until well after December 1, 1993. It is just and practica-

## INADEQUATE DISCLOSURES

■ As an alternate ground, the plaintiffs contend there was a scarcity of information contained in the defense expert reports. Counsel refers to the disclosure obligations of Fed.R.Civ.P. 26(a)(2)(B).[4]

The language of Rule 26(a)(2)(B) is deceptively simple:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case ... be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

The Rule requires disclosure of six different categories of information:

1. A complete statement of all opinions that will be expressed at trial and the reasons and basis for the opinion;[5]

2. The data and information considered by the expert;[6]

---

ble for the parties to be held to the standards of Rule 26(a)(2)(B). Many courts hold that "to the maximum extent possible, the amended Rules should be given retroactive application," *Wilson v. City of Atlantic City*, 142 F.R.D. 603, 605 (D.N.J.1992); *Burt v. Ware*, 14 F.3d 256, 258 (5th Cir.1994); *China Resource Products (U.S.A.) Ltd. v. Fayda Int'l Inc.*, 856 F.Supp. 856, 867 n. 24 (D.Del.1994); *Salkey v. Garrett*, 1993 WL 547461 at *5 (E.D.N.Y.1993), a sentiment with which this court wholeheartedly agrees.

5. In simple terminology, this means "how" and "why" the expert reached the conclusions and opinions to be expressed.

6. Again, in simple language, this means "what" the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed.

3. Any exhibits the expert will use;

4. Qualifications of the expert, including publications for the past ten (10) years;

5. Compensation; and

6. A list of other cases in which the expert has testified during the previous four (4) years.

Rule 26(a)(2)(B) is best understood when read in conjunction with Rule 26(b)(4)(A) which states:

A party may depose any person who has been identified as an expert whose opinion may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.

The purpose for these Rules is best explained in the following passages from the Advisory Committee Notes:

"Revised subdivision (b)(4)(A), authorizes the deposition of expert witnesses. Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition.[7]

.    .    .    .    .

The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions. Accordingly, the deposition of an expert required by subdivision (a)(2)(B) to provide a written report may be taken only after the report has been served." [8]

The reason for requiring expert reports is "the elimination of unfair surprise to the opposing party and the conservation of resources." [9]  *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995). *See also Smith v. State Farm Fire and Casualty Co.,* 164 F.R.D. 49, 53 (S.D.W.V.1995); *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 682 (D.Kan.1995). The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.

Plaintiffs herein claim they were forced to undertake these depositions because of the inadequacies of the defense expert reports. Close examination of the reports and transcripts of the deposition testimony shows that the plaintiffs are substantially correct. Dr. Weisberg fails to reveal his compensation, his publications for the preceding ten years, and his prior testimony. During the course of the deposition, he revealed there were many documents other than those disclosed in his report which he relied upon in reaching his conclusions. Nor is there a complete analysis in the report of the basis and reasons for his opinions—there is very little "how" and "why" he reached his conclusions.

The three reports of Dr. Dunton omit his compensation and prior testimony. He also revealed at his deposition additional documents relied on in reaching his conclusions. While his second report attempts in a few sentences to state the basis of his opinion, it clearly is inadequate.

Dr. Riggs in his report merely refers to the data he relied on as "Volume I and Volume II." He did not bring these to the

---

7. 146 F.R.D. at 635.

8. 146 F.R.D. at 638–39.

9. The disclosure requirements of the Rules are also particularly helpful to the court in making rulings limiting or restricting expert testimony pursuant to Evidence Rules 104(a) and 702 and *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As Judge Schwarzer has written:

By requiring the parties to follow the disclosure procedure under Federal Rules of Civil Procedure 26(a)(2), the court will have before it a complete statement of the opinions to which the expert will testify and the factual basis. *This material, supplemented by memoranda addressed to the evidentiary issues, will provide a helpful record for rulings under Rule 104(a).*

Schwarzer, "Management of Expert Evidence," *Reference Manual on Scientific Evidence* (Federal Judicial Center 1994), p. 30.

deposition, but did locate some correspondence (not previously disclosed) which listed the records. At his deposition, he also revealed for the first time he had reviewed some "literature," such as textbooks, and the "standards of ACOG." He failed to list in his report his compensation, his prior testimony, or his publications. On the other hand, the report is the most "complete" of all those submitted.

Dr. Mikuta failed to state the records or data he relied on. There was no mention in his report of compensation or prior testimony. He did attempt to explain the basis of his conclusions, but it is not very detailed.

The report of Dr. Goldberg does not reveal his compensation or prior testimony. Furthermore, at deposition he revealed for the first time he considered data not listed in his report. Like most of the other reports, there is little analysis of his opinions in the written report.

Dr. Giuntoli did not provide in his report his compensation or prior testimony. He also testified at deposition about documents, articles, texts and reports he considered (other than those listed in his written report). Analysis of his opinion is lacking.

Every defense expert report to some extent failed to meet the disclosure requirements of Rule 26(a)(2)(B). These reports are not sufficiently detailed, complete and in compliance with the Rule so that the plaintiffs would not be surprised. The reports (with the exception of Dr. Riggs) were brief. While some refer to massive amounts of documents, the opinions are expressed in vague terms with few specific references. *See Smith v. State Farm Fire and Casualty Co., supra.* Plaintiffs' counsel was forced to take these depositions if he wanted to avoid ambush at trial. Having found a violation of Rule 26(a)(2)(B), the court turns to the question of an appropriate remedy.

■ Sanctions for violation of Rule 26(a)(2)(B) can be severe:

A party that without substantial justification fails to disclose information required by Rule 26(a) ... shall not, unless such failure is harmless, be permitted to use as evidence at trial ... any ... information not so disclosed. In addition to or in lieu of this sanction, the court ... may impose other appropriate sanctions....

Fed.R.Civ.P. 37(c)(1). To impose a sanction the court must first consider whether there is "substantial justification" for the failure and then consider whether the failure was harmless. Counsel do not even address the issue of substantial justification, nor could they realistically assert they had no obligation to make the disclosures clearly required by the Rule.[10]

As to whether the failure is harmless, one court defines that term as follows: "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to disclosure." *Nguyen v. IBP, Inc., supra,* 162 F.R.D. at 680. The omission in most reports of the basis and reasons for the opinions is hardly harmless. Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion.[11]

---

10. To the extent counsel would argue they supplied everything given them by their expert and thus they should be excused from complete compliance, this court agrees with the court in *Nguyen v. IBP, Inc., supra* 162 F.R.D. at 681:

The requirements of Rule 26(a) are mandatory as to any expert retained to testify. If the expert is unable or unwilling to make the disclosures he should be excluded as a possibility for retention as an expert witness in the case.

⋅ ⋅ ⋅ ⋅ ⋅

A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26.

11. The insistence of Rule 26(a)(2)(B) on a "complete statement of all opinions to be expressed and the basis and reasons therefore" has another salutary effect. Practitioners should no longer have to face what is referred to in the state courts as a "net opinion." This is defined as an expert's bare conclusion, unsupported by factual evidence. *Buckelew v. Grossbard,* 87 N.J. 512, 524, 435 A.2d 1150 (1981) ("... the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom.") Counsel (and the court) will be able to determine if the expert has a "net opinion" just from the report. Furthermore, it eliminates the dilemma a "net opinion" problem presents to adversarial counsel—whether to rely upon the written report received in discovery or risk taking the expert's deposition and thereby open the door to additional opinions expressed for the first time in the

With respect to the other disclosure deficiencies, these too are not harmless. Plaintiff's counsel devoted substantial time in questioning the defense experts on these matters. For example, the first twenty-five (25) pages of the deposition testimony of Dr. Mikuta is devoted to prior testimony, compensation, and the data or other information considered by the witness.

The failure to comply with the disclosure requirements of the Rule frustrates the purpose of the Rules—the elimination of unfair surprise and the conservation of resources. *Sylla–Sawdon v. Uniroyal Goodrich Tire Co., supra.* Rule 37 compels a sanction.

The court finds the appropriate sanction is to grant the relief requested by plaintiffs and require the defendants to bear the fees charged by their experts for the discovery depositions. The court reaches this conclusion for a number of reasons. First, barring the testimony of the experts is unduly harsh in this case in which expert testimony will dominate the proceedings.[12] Second, the court perceives that attorneys practicing before this court have not become completely accustomed to the substantial changes in practice caused by the 1993 Amendments to the Rules. Voluntary disclosure has not heretofore been the practice. Third, the language of Rule 37(c)(1) gives the court broad discretion to fashion a remedy, as the court "may impose other appropriate sanctions." And, fourth, the only sanction sought by the moving party is to shift the costs of the deposition.

Accordingly, the court having found numerous violations of the disclosure requirements of Fed.R.Civ.P. 26(a)(2)(B), the court imposes the appropriate sanction of granting the plaintiffs' motion to compel the defendants to bear the fees charged by their experts for testifying at the discovery depositions conducted by the plaintiffs' counsel. An appropriate Order shall enter.

### ORDER

THIS MATTER having been brought upon motion before the Court by John F. Kearney, III, Esquire, attorney for the plaintiffs, for an order compelling each party to bear the costs of its own expert's deposition; and the Court having considered the moving papers and the opposition thereto; and for good cause shown herein and in the accompanying Opinion;

IT IS this 27th day of March, 1996 hereby

**ORDERED** that the plaintiffs' motion is **GRANTED.**

---

testimony, (usually accepted by the court). *See Gaido v. Weiser,* 227 N.J.Super 175, 193, 545 A.2d 1350 (App.Div.1988), *aff'd on other grounds,* 115 N.J. 310, 558 A.2d 845 (1989). (deposition testimony differed from the written report, received by the court as a supplemental report).

**12.** The sanction specified in the first sentence of Rule 37(c)(1), exclusion of the matters not disclosed, has little relevance for the disclosure failures here. Defense counsel would not likely ask their experts on direct examination about their compensation and prior testimony, and Fed. R.Evid. 705 does *not* require that the expert during direct examination testify about the underlying facts and data. Thus that sanction seems aimed at situations where the report is not "complete" or does not contain "all opinions." It is the opinions and the like expressed for the first time at trial that will be barred pursuant to Rule 37(c)(1). *See Paradigm Sales, Inc. v. Weber Marking Systems,* 880 F.Supp. 1247, 1255 (N.D.Ind.1995).