**UNITED STATES of America, Plaintiff,**

**v.**

**PHILIP MORRIS USA INC., f/k/a Philip Morris Inc., et al., Defendants.**

**No. CIV.A.99–2496(GK).**

United States District Court,
District of Columbia.

Aug. 10, 2004.

Sharon Yvette Eubanks, U.S. Department of Justice, Washington, D.C., Renee Brooker, U.S. Department of Justice, Civil Division, Washington, D.C., Stephen Dudley Brody, U.S. Department of Justice, Washington, D.C., for Plaintiff.

Alfred McDonnell, Arnold & Porter, Denver, CO, Amy L. McGinnis, Arnold & Porter, Washington, DC, Amy Elizabeth Ralph, Arnold & Porter, Washington, DC, Anastasia G. Weis, Winston & Strawn, Chicago, IL, Anne McBride, Walker, Arnold & Porter, Washington, DC, Ashley Cummings, Hunton & Williams, Atlanta, GA, Ben M. Germana, Wachtell, Lipton, Rosen & Katz, New York City, Bradley E. Lerman, Winston & Strawn, Chicago, IL, C. Ian Anderson, Davis, Polk & Wardwell, New York City, Christopher J. Cullen, Winston & Strawn, Washington, DC, Cindy L. Gantnier, Hunton & Williams, Richmond, VA, Dan K. Webb, Winston & Strawn, Chicago, IL, Daniel C. Jordan, Hunton & Williams, McLean, VA, Duane J. Mauney, Arnold & Porter, Washington, DC, Elizabeth D. Jensen, Winston & Strawn, Chicago, IL, Erik D. Nadolink, Hunton & Williams, Richmond, VA, Floyd E. Boone, Jr., Arnold & Porter, Washington, DC, Herbert M. Wachtell, Wachtell, Lipton, Rosen & Katz, New York City, James Lewis Brochin, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, James Miller Rosenthal, Arnold & Porter, Washington, DC, Jane E. Chang, Winston & Strawn LLP, Washington, DC, Jay L. Levine, Winston & Strawn, Washington, DC, Jeanna Maria Beck, Arnold & Porter, Washington, DC, Jeffrey Wagner, Winston & Strawn, Chicago, IL, Jeffrey M. Wintner, Wachtell, Lipton, Rosen & Katz, New York City, Jonathan Louis Stern, Arnold & Porter, Washington, DC, Kendall Millard, Arnold & Porter, Washington, DC, Kevin M. Green, Arnold & Porter, Washington, DC, Kevin J. Narko, Winston & Strawn, Chicago, IL, Lauren J. Bernstein, Winston & Strawn, New York City, Leslie Wharton, Arnold & Porter, Washington, DC, Luke A. Palese, Winston & Strawn, Chicago, IL, Matthew Campbell, Winston & Strawn LLP, Washington, DC, Melissa L. Marglous, Arnold & Porter, Washington, DC, Michael R. Geske, Arnold & Porter, Washington, DC, Murray R. Garnick, Arnold & Porter, Washington, DC, Nick Malhotra, Arnold & Porter, Washington, DC, Patricia M. Schwarzschild, Hunton & Williams, Richmond, VA, Peter Thomas Grossi, Jr., Arnold & Porter, Washington, DC, Ricardo E. Ugarte, Winston & Strawn, Chicago, IL, Richard H. Burton, Hunton & Williams, Richmond, VA, Robert M. Rader, Winston & Strawn LLP, Washington, DC, Ryan David Guilds, Arnold & Porter, Washington, DC, for defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Joint Defendants have filed five separate, but similarly based, Motions in Limine to

Exclude Certain Testimony and Exhibits of Plaintiff's Experts Drs. Biglan, Chaloupka, Dolan, Eriksen, and Krugman. Joint Defendants seek the exclusion at trial of certain portions of the testimony of these five marketing experts for violation of Plaintiff's discovery obligations under Fed.R.Civ.P. 26(a)(2)(B) and 26(e), as well as various Case Management Orders entered during the course of this litigation. The Government opposes the Motions.

Because the Government chose to file a consolidated Opposition, and Joint Defendants then filed a consolidated Reply, and because there are certain issues common to all five of the Motions, the Court will issue one Order that addresses both the common, as well as individual, issues raised in the papers. The Court has spent an immense amount of time reviewing these papers and various attachments, as well the memoranda of the parties, and has concluded that the Motions should be **granted in part and denied in part**, for the reasons stated herein.

On November 15, 2001, Plaintiff filed the five expert reports which are involved in these Motions, in compliance with Order # 65. That Order required that the reports "shall comply with the requirements set forth in [Fed.R.Civ.P.] Rule 26(a)(2)(B)." Each of the reports dealt with specific subject matter and identified documents and exhibits which the expert had "considered" in reaching his opinions. Joint Defendants then filed their responsive experts' reports on February 1, 2002, as also required by Order # 65. The five experts were deposed at different times and filed their "supplemental/rebuttal" reports by May 1, 2002, pursuant to Order # 65, as later modified by Order # 143.

In Order # 230, entered October 1, 2002, the Court greatly extended discovery and continued the trial date for more than a year, in large part because of Joint Defendants' failure to comply with pre-existing discovery deadlines, including their late filing of more than two million pages of documents. That late production of materials continued well into 2003. Order # 230 extended the deadline for the filing of Plaintiff's expert witness statements and disclosure of all "data and

information considered" by those experts to September 1, 2003.

After receiving late productions of at least eight million pages from Joint Defendants subsequent to the November 15, 2001 filing of expert reports, reviewing them, and making them available to their experts to evaluate, the United States then disclosed to the Joint Defendants those additional materials ("Supplemental Materials") which their experts "considered" in reaching their opinions, pursuant to the requirements of Fed.R.Civ.P. 26(a)(2)(B). Despite the magnitude of this effort, the United States met the September 1, 2003 deadline imposed by Order # 230, and provided Joint Defendants with thousands of additional documents and substantial amounts of new data pursuant to Fed. R.Civ.P. 26(e). In addition, the United States made each of these five experts available for an additional seven hour deposition in order to allow Joint Defendants to explore how the Supplemental Materials filed by the September 1, 2003 deadline related to their opinions. In some cases, the United States did not provide any supplemental report or other written explanation of the relationship between the newly disclosed documents and data and the opinion of the expert for whom they were submitted.

Joint Defendants argue that the Supplemental Materials submitted by Plaintiff's five marketing experts before the September 1, 2003 deadline, but subsequent to their November 2001 initial reports, and May 2002 rebuttal reports, should be excluded because of the following violations of either Fed. R.Civ.P. 26 or Case Management Orders issued by this Court:

1. The vast majority of Supplemental Materials considered by Plaintiff's experts, and provided to Joint Defendants before September 1, 2003, were available to those experts (and therefore should have been disclosed) prior to November 2001;

2. Any "new opinions" of Plaintiff's experts, provided subsequent to their reports of November 15, 2001 and May, 2002 should be excluded for violation of Rules 26(a)(2) and 26(e); and

3. To the extent that Plaintiff's experts were unwilling or unable to explain how the Supplemental Materials related to the expert opinions they submitted prior to the September 1, 2003 deadline, such supplementation must be excluded for violation of Fed. R.Civ.P. 26(e).

## I. Availability of Supplemental Materials before September 1, 2003

Initially, it must be noted that it was the failure of Joint Defendants to make timely production of more than two million pages of materials which was a major precipitating factor in the entry of Order # 230 extending the deadlines, including the trial date, originally set forth in Order # 65. Because of this continuing problem with late production, the United States received more than eight million pages of materials, on a rolling basis, *after* the November 15, 2001 deadline for submission of expert reports required by Order # 65. In addition, a great majority of the nearly 300 depositions taken by the parties occurred *after* November 15, 2001. Moreover, the United States did not receive access to Defendants' direct mail marketing databases until 2003, when the Court entered Order # 564, on June 7, 2004, adopting Report & Recommendation # 149. Finally, the failure of Joint Defendants to produce their own cigarette advertisements, which constitute a substantial percentage of the Supplemental Materials, forced the United States to obtain them late in the discovery period.

Thus, it is perfectly clear that while some of the Supplemental Materials were available to the United States prior to November 15, 2001,[1] a very significant amount were not. Consequently, there is no justification for granting the extreme sanction requested by Joint Defendants, namely that the five experts should be barred from relying upon or testifying about *all* of these Supplemental Materials. Not only were these Materials, substantial as they were, produced more than

one year before trial, but Joint Defendants were afforded a full seven-hour deposition of each expert and could have asked for more time if they needed it (which they did not), for inquiry about the Supplemental Materials. In sum, Joint Defendants were given a year and a deposition opportunity to cure any prejudice they may have suffered by submission of the Supplemental Materials.

## II. New Opinions of the Five Marketing Experts and Their Inability to Explain Consideration of Supplemental Materials

Fed.R.Civ.P. 26(a)(2)(B) requires that a written report be submitted for any expert opinion. The Court has examined the memoranda submitted by counsel and has concluded that certain of the experts have in fact developed "new" opinions, for which the written reports required by Rule 26(a)(2)(B) have not been submitted. What is more, in the instances to be identified, the "new" opinions are significant and are precisely the type of material for which Rule 26(a)(2)(B) was designed in order to avoid blind siding the opposing party and creating "an ambush at trial." *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir.2001). In addition, in certain instances also identified herein, these experts were totally unable to explain how, if at all, their Supplemental Materials related to their opinions.

### A. Dr. Anthony Biglan

■ The Court concludes that Dr. Biglan has not presented in his 2003 deposition and Supplemental Materials any "new" opinions. However, he did submit two Supplemental reports and large numbers of Supplemental Materials, many of which were available prior to September 2003 and some of which he did not review in preparation for his December 2003 deposition.[2] It is troubling that Dr.

---

1. Only a page-by-page examination of these millions of pages of materials would reveal a precise and totally accurate number.

2. As to many of the materials that were available prior to September 2003, Joint Defendants suffered virtually no prejudice. A substantial portion of the materials consisted of Joint Defen-

dants' own cigarette advertisements; another substantial portion of the materials came from the Pollay collection, a website well known to the Joint Defendants; and the Philip Morris Direct Mail Marketing database was not produced until late in 2003.

Biglan could not, off the top of his head, identify specific documents that provided the basis for certain of his opinions. However, while he organized the Supplemental Materials in alphabetical order, as is common procedure in his field, he also demonstrated at the deposition that they could easily be separated into three general topical categories. He was then able to offer explanations of his opinions based on those categories. Consequently, Dr. Biglan's supplemental disclosures and his corresponding testimony were not so unresponsive as to prejudice Defendants and thus warrant preclusion under Rule 37(c)(1).

### B. *Dr. Frank Chaloupka*

Dr. Chaloupka acknowledged that he had developed new opinions by the time of his final deposition. In particular, he acknowledged that he changed his opinion because one of Plaintiff's lawyers had explained the meaning of certain technical legal terms. Joint Defendants were able during the course of Dr. Chaloupka's deposition to examine him on this issue. Since Joint Defendants were not prejudiced by the failure of Dr. Chaloupka to file the requisite Rule 26(a)(2)(B) report, the Court sees no need to impose the Draconian sanction of preclusion.

Dr. Chaloupka also presented in his December 2003 deposition, new opinions regarding the relationship between promoting smoking and youth brand choice. The data on which he based these new opinions had been available well before the deadline for submission of supplemental and rebuttal reports pursuant to Orders # 65 and # 143. The Government has offered no reason for the failure to comply with the requirements of Rule 26(a)(2)(B) and submit a written report spelling out the details of the new opinions and the data upon which they were based. Consequently, the Government will be precluded under Rule 37(c) from presenting this information.

Finally, Dr. Chaloupka acknowledged that he had taken no notes on his review of thousands of new items contained in his Supplemental Materials. For that reason, understandably, he could not even identify what deposition testimony he had reviewed and what supported his opinions. Although he admitted that certain company documents which he had reviewed did not support his opinions, he could not even specify which ones did support his views. What is clear from reading the parties' papers is that Dr. Chaloupka seemed to have astoundingly little knowledge about the thousands of pages submitted as Supplemental Materials, which he had supposedly "considered" pursuant to Rule 26(a)(2)(B). For example, he testified that:

> I am going to have to go through quickly and do some of the sorting that we talked about in terms of determining which ones are completely irrelevant and then when we get down to a set that appears more relevant I'm going to look at those more carefully and then start to develop the set of which ones are going to be most directly relevant to my testimony once it's established what exactly I'm going to be testified [sic] about.

Therefore, the Court is forced to conclude that the Supplemental Materials which Dr. Chaloupka submitted in his five supplemental disclosures must be excluded because Dr. Chaloupka's lack of knowledge about the materials made it impossible for Joint Defendants to make any use of the deposition opportunity offered to them in December 2003. "Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusions." *Reed v. Binder*, 165 F.R.D. 424, 430 (D.N.J. 1996).

### C. *Dr. Robert J. Dolan*

Dr. Dolan's December 2003 deposition makes it clear that he too had developed new opinions since his previously filed expert report and deposition. In particular, after having no opinion in May 2002 regarding the existence of deceptive statements on the companies' websites, Dr. Dolan announced at his December 2003 deposition that he was of the opinion that there are statements on the companies' websites that he now regards as deceptive, particularly those related to youth marketing. In addition, Dr. Dolan also in-

tends to offer opinions regarding Philip Morris' adult smoker database.

As to the first issue, whether there are deceptive statements on the companies' websites, Dr. Dolan is precluded pursuant to Rule 26(a)(2)(B) from offering these new opinions because he failed to submit a written report setting forth those opinions and the reasons for them. As to the second issue, regarding Philip Morris' adult smoker database, Dr. Dolan ultimately stated that he has no additional opinions on this subject beyond those offered in his expert report and, therefore, Joint Defendants' objection is moot.

While Dr. Dolan's explanation of how the Supplemental Materials relate to his earlier opinions which were submitted on a timely basis is hardly a model of clarity or completeness, the Court does not find in his case that the explanations were so "woefully inadequate" as to justify the Draconian sanction of exclusion.

### D. *Dr. Michael Eriksen*

■ Dr. Eriksen provided new opinions at his December 2003 deposition. In particular, he stated opinions on low tar marketing, a subject which was entirely different than the subject of youth smoking to which his original reports were devoted. Dr. Eriksen submitted no report in explanation and justification of his new opinion as required by Rule 26(a)(2)(B). It was not until March 15, 2004, a mere six months before trial, that the Government explicitly disclosed in its final Witness List, at 69, that Dr. Eriksen would testify that "cigarette marketing is a substantial contributing factor to ... the continuation of smoking" and "Defendants' light cigarette marketing has been directed at 'health conscious smokers.' " Because the Government had consistently represented Dr. Eriksen as a youth expert, not a low tar or light cigarette expert, he is precluded from offering any testimony at trial on the effects of advertising light cigarettes on

smokers who might otherwise quit and the subject of low tar marketing.

### E. *Dr. Dean Krugman*

■ Dr. Krugman offered four sets of Supplemental Materials beginning on July 16, 2003 through August 28, 2003. On October 21, 2003, he offered a new declaration giving an opinion for the first time as to a number of magazine advertisements for cigarettes. Virtually all of the Supplemental Materials, and certainly all of the advertisements, were Joint Defendants' own documents and were requested for production by the Government.[3] Thus, Joint Defendants' claims that Dr. Krugman's Supplemental Materials should be excluded because they were available prior to his original November 2001 report are unpersuasive. In light of the twin purposes of Rule 26, narrowing of issues and elimination of surprise and prejudice, *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 7 (1st Cir.1985), Joint Defendants cannot reasonably argue that they are surprised or prejudiced by the introduction of their own materials. Moreover, the delayed supplementation at issue here is largely the result of Joint Defendants' failure to produce their own marketing data, including their own advertisements, forcing the Government to obtain such data wherever it could.

While Dr. Krugman's explanation, like that of Dr. Doland's, on the relationship of the Supplemental Materials to his previously-expressed opinions, lacked the precision and specificity which Joint Defendants sought, the Court does not find those explanations so "woefully inadequate" as to justify exclusion.

### III. *Conclusion*

The Court has focused on the most serious and prejudicial violations of Rule 26, recognizing that in a case of this magnitude, it is impossible to expect total compliance with the obligations imposed by both Rule 26 and the relevant Case Management Orders. The Court has taken full account of the fact that the Government, in good faith, met the Sep-

---

**3.** The Supplemental Materials include: (1) marketing plans produced by various Joint Defendants; (2) internal documents of Joint Defendants; (3) Joint Defendants' cigarette advertisements; (4) data about race car sponsorships by various Joint Defendants; and (5) the 30(b)(6) deposition of Leo Burnett, ad agency for Philip Morris.

tember 2003 deadline, submitted its Supplemental Materials a year in advance of trial, and voluntarily offered additional depositions to Joint Defendants. For that reason, the Court has rejected Joint Defendants' blanket argument that the Government should not be allowed to offer any Supplemental Materials that were available prior to the disclosure deadline set forth in Order # 230. By the same token, however, the Court cannot ignore the prejudice to Joint Defendants when the Government's experts either lack the ability to articulate the relationship between the Supplemental Materials and the opinions expressed in earlier reports or offer new opinions for the first time in those supplemental disclosures.

For all the forgoing reasons, the Court concludes that the Motions should be **granted in part and denied in part.**